John Pierce
Themis PLLC
2305 Calvert Street NW
Washington DC 20008
tel. (202) 567-2040

SAIED KASHANI, SBN 144805, admitted Pro Hac Vice
800 West First Street Suite 400
Los Angeles, California 90012
tel. (213) 625-4320
fax (213) 652-1900
email: **saiedkashani@gmail.com**

Attorneys for Defendant
SHANTIA HASSANSHAHI

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIM. ACTION NO. 13-0274 (RC) |
| | ) |
| Plaintiff, | ) DEFENDANT'S RESPONSE TO |
| | ) GOVERNMENT FILING RE |
| v. | ) SYSTEMATIC STATUTORY VIOLATION |
| | ) OF 21 U.S.C § 876 |
| SHANTIA HASSANSHAHI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**TABLE OF CONTENTS**

SUMMARY................................................................ 1

ANALYSIS............................................................... 2

I.   GOVERNMENT HAS ENGAGED IN A SYSTEMATIC AND PERVASIVE
     VIOLATION OF THE STATUTE, AND APPEARS TO CONTINUE TO
     WITHHOLD FULL INFORMATION ABOUT THE VIOLATION............. 2

II.  THE STATUTORY VIOLATION PLUS THE CONCEDED
     CONSTITUTIONAL VIOLATION REQUIRES SUPPRESSION OF THE
     EVIDENCE.................................................. 6

III. GOVERNMENT THUS ALSO CONCEDED STANDING.................... 7

IV.  THE VIOLATION WAS EGREGIOUS............................... 8

CONCLUSION............................................................. 8

**SUMMARY**

Title 21 USC § 876 allows the government to serve an administrative subpoena in connection with a purely drug enforcement investigation.  Government has systematically violated this statute for over a decade by using the subpoena process to secretly gather a database of telephony information on all Americans, and then utilizing the database (while disguising its source) in all manner of investigations in all fields not related to drugs at all.  Government utilized this pervasive scheme to "finger" defendant Hassanshahi and would not have searched Mr. Hassanshahi's computer but for the scheme.  As this Court held on December 1, 2014 (Mem. Dec. p. 9), "the Court finds that the existence of but-for causation between the law enforcement database search and the forensic laptop examination is quite plain."

This was not a one-time or negligent statutory violation that happened to uncover evidence of another crime, or even the sharing of information *legitimately gathered* for one purpose with another agency.  Cf. Johnson v. Quander, 440 F.3d 489 (D.C.Cir. 2006) (government may use DNA profiles gathered pursuant to and in conformance with statute for other investigations).  By its very nature, the gathering of telephony information was repeated and systematic, as was the making available of the database to all government agencies, and all aspects of the scheme (from gathering to dissemination outside drug investigations) violated the statute.

In its latest filing, government claims a statutory violation alone does not justify suppression of evidence absent

1

a constitutional or Fourth Amendment aspect. <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331, 347 (2006). Government forgets that in this case, government *already stipulated* the use of the database was unconstitutional. Mem. Dec. p. 9 ("Regrettably, the Court therefore starts its analysis from the posture that HSI's initial search of the mysterious law enforcement database... was unconstitutional." Having prevailed at the last hearing by concealing information, government is bound by its prior admission and cannot reverse it now. Government's concession also negates its current claim that Mr. Hassanshahi "lacks standing" to assert the violation. Thus, per government's own cited authorities, the resulting evidence must be suppressed.

It further appears that government agents were directed to conceal and disguise the use of the database from defense attorneys and the courts. Reuters, August 5, 2013 (attached). At a minimum, further discovery and hearings are needed to explore the nature of the program and the lengths the government went to conceal it.

**ANALYSIS**

**I.   GOVERNMENT HAS ENGAGED IN A SYSTEMATIC AND PERVASIVE VIOLATION OF THE STATUTE, AND APPEARS TO CONTINUE TO WITHHOLD FULL INFORMATION ABOUT THE VIOLATION**

21 USC § 786 provides:

> In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may . . .require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General

2

>finds relevant or material to the investigation.

The statute thus confines the administrative subpoena to controlled substances (drug enforcement) *and also* to an *investigation* concerning controlled substances. In context this can only mean a *specific* investigation (Code uses the phrases "in any investigation... material to *the* investigation").

Here the government secretly and systematically violated every aspect of the statute. The government served administrative subpoenas, not in connection with any particular investigation of controlled substances, but systematically. Most probably the government automatically served a subpoena on every telecommunications provider every month, demanding full telephony records, possibly in electronic form. The result was a systematic database of telephone records of every call to and from every American to and from abroad.[1] This is of necessity. If there were "gaps" in the subpoenae -- for example if the government only served a subpoena on a specific provider from time to time as said provider came up in a specific drug investigation -- there would be large gaps in the telephony data and the resulting database would not work as intended.

The government also violated the statute because neither the subpoenae nor the resulting database were confined to drug enforcement. Government concedes that this case, for example,

---

[1] Government claims the subpoenae sought records of calls to and from "countries associated with drug trafficking." Every country in the world, including the Vatican, has been "associated" with drug trafficking. Thus the government most likely demanded monthly records of every single call to or from abroad.

3

has nothing to do with drugs, but the database was obviously freely accessible to the agents in charge.  Government must have known of the unrestricted use of the database while serving the subpoenae (at some point it became obvious that the database was being used for non-drug investigations, but government continued gathering the telephony records).  Thus both in *gathering* and *disseminating* the data, government engaged in a systematic statutory violation.

Nor is this a matter of "sharing" legitimately gathered information among agencies.  In Johnson v. Quander, 440 F.3d 489 (D.C.Cir. 2006), the relevant statute specifically permitted and called for collection of DNA from parolees and probationers.  Said information, legitimately gathered, could be shared with other agencies.  No statute permitted the gathering of telephone records in this case -- by contrast, the statute precluded subpoenaes except for drug enforcement investigations.  No case has ever immunized the sharing of data gathered through a systematic statutory violation.

Nor has government "come clean" even at this stage.  In 2013, Reuters reported (attached):

> A secretive US Drug Enforcement Administration unit is funneling information from intelligence intercepts, wiretaps **and a massive database of telephone records** to authorities across the nation to help them launch criminal investigations of Americans.
>
> [D]ocuments reviewed by Reuters show that law enforcement agents have been directed to conceal how such investigations truly begin -- not only from defense lawyers but sometimes from prosecutors and judges.
> . . .

4

|   |   |
|---|---|
| 1 | The unit of the DEA that distributes the information is called the Special Operations Division, or SOD. |
| 2 | |
| 3 | . . . |
| 4 | Today, much of the SOD's work is classified, and officials asked that its precise location in Virginia not be revealed. **The documents reviewed by Reuters are marked "Law Enforcement Sensitive," a government categorization that is meant to keep them confidential.** |
| 5 | |
| 6 | |
| 7 | |
| 8 | "Remember that the utilization of SOD cannot be revealed or discussed in any investigative function," a document presented to agents reads. The document specifically directs agents to omit the SOD's involvement from investigative reports, affidavits, discussions with prosecutors and courtroom testimony. Agents are instructed to then use "normal investigative techniques to recreate the information provided by SOD." |

The SOD program as reported by Reuters, resembles the events in the instant case.  The government refused to disclose any details of the database until this Court ordered disclosure. The Court will recall that the government's revised affidavit mentioned, for the first time, that the agent had consulted another database (TECS) -- was this an attempt to "recreate" an investigative trail that originated with SOD?  The current affidavit is also marked "Law Enforcement Sensistive."  At a minimum, the reports merit further investigation and discovery in this case.  Was there not only a systematic statutory violation, but also a systematic program to conceal the violation and disguise the improper origin of information used in this and other case?

**II. THE STATUTORY VIOLATION PLUS THE CONCEDED CONSTITUTIONAL VIOLATION REQUIRES SUPPRESSION OF THE EVIDENCE.**

Government claims a statutory violation alone will not require suppression of the evidence. The Supreme Court did not in Sanchez-Llamas, 548 U.S. at 348:

> The few cases in which we have suppressed evidence for statutory violations do not help Sanchez-Llamas. In those cases, the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests.

Query the application of this rule in this case, as the rule came about in the context of a one-time or negligent violation, not a systematic, intentional violation. For example in Sanchez-Llamas, the individual defendant, a Mexican citizen, was not afforded a chance to consult with his consulate per provision of international treaty. This treaty or statutory violation was held not to be grounds for suppression absent a constitutional aspect. But unlike the instant case, there was no suggestion in Sanchez-Llamas that the government was systematically denying suspects of their rights under the treaty, or routinely preventing foreign nationals from reaching their consulates. That would be the proper analogy to the instant case, where the statutory violation is intentional and systematic at all levels (issuance of subpoenae, gathering of information, dissemination to other agencies, and concealing the true origin of the data).

Defendant herein submits that a *systematic* statutory violation, or a program whose purpose is to violate the statute continuously over decades, presents a case of first impression not governed by Sanchez-Llamas or other government cases.

But the Court need not reach the novel issue because in the instant case, the government *already conceded* that use of the database was a constitutional violation *of Mr. Hassanshahi's rights*. Indeed the Court asked this Court to *assume* the constitutional violation. Mem. Dec. p. 9. Where there is a statutory violation *plus* an individual constitutional violation, the evidence shall be suppressed even under government's cited cases.

Nor can the government withdraw its concession, because the government has already benefited by the favorable result at the last hearing. Allowing a "switch" now would be unfair and a denial of due process at the hearing. Government cannot take one position at one hearing and a different position in subsequent proceedings. In Steagald v. United States, 451 U.S. 204, 210-211 (1981), government originally connected defendant to the house that was searched, but later sought to argue defendant lacked a reasonable expectation of privacy in the searched home. The Supreme Court held the government to its original position and precluded changing course. Similarly here, having conceded that the database violated Mr. Hassanshahi's constitutional protections, government cannot now switch course and claim "merely" a statutory violation.

**III. GOVERNMENT THUS ALSO CONCEDED STANDING.**

Government now argues Mr. Hassanshahi "lacks standing" to contest the statutory violation. Again, government forgets it previously conceded that use of the database was unconstitutional, meaning unconstitutional *as to defendant* (otherwise the concession was meaningless and afforded no

7

grounds to withhold information). Mr. Hassanshahi obviously has standing to assert a *conceded* constitutional violation.

**IV. THE VIOLATION WAS EGREGIOUS.**

Going back to the prior ruling, it is now clear that government's conceded constitutional violation was systematic and in violation of statute, i.e. egregious. This is further grounds to suppress the evidence, particularly if, as appears, the evidence was gathered as part of a systematic program to conceal its true origin.

**CONCLUSION**

The evidence should be suppressed. Alternatively, a further hearing is necessary to explore the scope of the program and, for example, whether this was part of the SOD program and whether agents were instructed to conceal or disguise the origin of the information. The latter is particularly applicable due to the change in affidavits in this case, which may have been an attempt to "recreate" the investigation without disclosing the program.

DATED: April 12, 2015

_____
Saied Kashani
Attorney for Defendant
SHANTIA HASSANSHAHI

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing opposition was served electronically on Frederick Yvette, counsel for the government, via email to Mr. Yvette's confirmed email address on April 12, 2015.

_____
Saied Kashani

8