SAIED KASHANI, SBN 144805
800 West First Street Suite 400
Los Angeles, California 90012
tel. (213) 625-4320
fax  (213) 652-1900
email:  **saiedkashani@gmail.com**

JOHN P. PIERCE
Themis PLLC
2305 Calvert Street NW
Washington, DC  20008
tel. (202) 567-2040
fax  (202) 567-2051
email:  JPierce@Themis.US.com

Attorneys for Defendant
SHANTIA HASSANSHAHI

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 13-CR-274-RC-1 |
| Plaintiff, | ) |
| | ) **DEFENDANT'S MOTION TO EXCLUDE** |
| v. | ) **DOCUMENTS ON EVIDENTIARY** |
| | ) **GROUNDS** |
| SHANTIA HASSANSHAHI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

1

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ........................................ 1

ANALYSIS ........................................................ 3

I.   UNSIGNED ALLEGED DRAFT OF LETTER TO IRANIAN MINISTER –
     EXHIBIT D TO GOVERNMENT LETTER ............................ 3

     A.   The nature of the document ........................... 3

     B.   Government's contentions ............................. 6

     C.   Grounds for objection ................................ 6

II.  Alleged emails from "shantia34@gmail.com" – Government
     letter Exhibits A and B ................................. 13

III. Alleged email from "Mark Babaei" to
     shantia34@gmail.com – Government letter Exhibit C ........ 14

IV.  Alleged email from "Mark Babaei" to "Aoub Shaban" –
     Government letter Exhibit E ............................. 18

V.   2004 Opinion by California Court of Appeal ............... 19

CONCLUSION ..................................................... 20

**TABLE OF AUTHORITIES**

United States v. Blechman,
    657 F.3d 1052 (10th Cir. 2011).                     17,18

Coughlin v. Capitol Cement Co.,
    571 F.3d 290 (5th Cir. 1978)                              7

United States v. Gatling, 96 F.3d 1511 (D.C. Cir. 1996)      14

Hageman v. Corporacion EG, S.A. de C.V.,
    2015 U.S. Dist. LEXIS 41314
    (W.Tex.Dist. March 31, 2015))                             7

United States v. Mouzin, 785 F.2d 682 (9th Cir. 1986).       12

Nicola v. United States, 72 F.2d 780 (3rd Cir. 1934)      7,8,9

United States v. Silverman, 861 F.2d 571 (9th Cir. 1988).    15

1              **INTRODUCTION AND SUMMARY**

2       Defendant Shantia Hassanshahi, a U.S. citizen with no

3  criminal record, is accused of some involvement in importing or

4  attempting to import certain civilian electrical equipment to a

5  private company in Iran.  It is not clear from the complaint

6  whether the equipment actually made it to Iran.  It is

7  undisputed that the equipment in question is non-military, non-

8  nuclear-related and non high-tech.  **There is no accusation or**

9  **suggestion whatsoever of violence or terrorism.**

10      Government has no fact witnesses whatsoever.  The proposed

11 incriminating evidence consists of documents found on a portable

12 laptop computer defendant was carrying at the Los Angeles

13 airport and emails subpoenaed from Google.

14      Admission of the documents presents detailed evidentiary

15 issues.  Defendant hoped to make an advance motion directed to

16 all documents government proposes to introduce at trial,

17 however, government has declined to specify or list all the

18 documents it intends to introduce at trial (now scheduled for

19 June).  By contrast, government continues to produce additional

20 documents, all that were available years ago, through the

21 present date, and all well past the originally-set February 16

22 deadline for production of documents.  At the same time the

23 trial date of June 2016 has not been moved.  The continued

24 production of documents within two months of trial, in a case

25 that has been pending for years and in which documents are the

26 only evidence, is highly prejudicial to defendant.

27      At defendant's request, government has kindly identified a

28 few documents it intends to introduce at trial, the source of

                              1

1  the document, and the proposed basis of introduction in

2  evidence.  These include what is believed to be the most

3  significant single document in the case (if admissible), an

4  alleged, unsigned, "letter" to an Iranian minister.  See

5  February 4, 2016 letter with attachments especially Exhibit D

6  thereto, attached collectively hereto as Exhibit 1.

7       Defendant does believe these documents are representative

8  of the types of documents government will introduce at trial and

9  of most (not all) of the evidentiary issues presented.

10 Therefore, this motion is directed to the documents attached to

11 government's letter and is phrased broadly so that the

12 conclusions of this motion can perhaps be applied to all similar

13 documents government plans to introduce at trial.

14      For example, if it is determined on this motion that the

15 mere possession of an unsigned document on the computer, without

16 more, is insufficient for authentication or admissibility over a

17 hearsay objection, this should apply to all unsigned documents

18 whose basis of introduction is that they were found on the

19 computer.

20      Defendant reserves further objections as to other documents

21 government plans to introduce at trial.  In addition, defendant

22 reserves further objections if the government proposes new

23 grounds for introduction of the specified documents.

24 Government, in turn, with defendant's agreement, reserves the

25 right to proffer further documents at trial that were not listed

26 on the letter (subject to objection as the documents are

27 proffered).

28

**ANALYSIS**

**I.   UNSIGNED ALLEGED DRAFT OF LETTER TO IRANIAN MINISTER -**
**EXHIBIT D TO GOVERNMENT LETTER**

**A.   The nature of the document**

We begin with the most significant document in the case
and, as far as appears, the only document that refers to an
actual crime, that of allegedly transporting goods to Iran.  By
contrast, emails allegedly from defendant himself, alleged
shipping records, and documents from Canadian customs refer only
to a sale of goods to a company in Armenia, a legal transaction.
To constitute a crime, government must prove further
transshipment to Iran facilitated by defendant himself.

Exhibit D to the government's letter (Exhibit 1) is an
alleged "letter" to an Iranian Minister requesting assistance to
obtain payment for goods allegedly shipped to Iran.  Exhibit D
is not the document itself.  Exhibit D is the government's
English-language translation of a "pdf" file entitled "Hasston
letter to Minister".  Government contends the pdf file was found
on the computer at LAX.  Government proposes to admit the
document as the "admission" of defendant.

It is important to understand what the actual computer file
is.  pdf stands for "portable document format".  There are two
main types of pdf files.  The first is a *scan* of a physical,
hardcopy letter.  A letter is printed out (or handwritten or
typed or otherwise put on paper) and then scanned by a scanner,
generating an image of the letter.  The image can be in
different computer formats such as "jpg" or JPEG, a format
typically used for digital photographs.  Or it can be a "pdf"

3

1  format.  The important point is that someone has actually

2  printed or otherwise prepared a hardcopy of the letter and then

3  scanned the physical letter.

4     "Scanned" pdfs are easy to discern because they always have

5  specks or other imperfections caused by dirt or dust on the

6  scanning equipment.  However, scans do precisely resemble the

7  hardcopy.

8     The important point about "generated" pdfs is that a

9  document is not "written" or word-processed as a pdf.  Instead,

10  the document is written using some other program, a word

11  processing program, and then output/converted to a pdf file.

12  Thus, the presence of a generated pdf file on a computer says

13  nothing about how, when, on what computer or by whom the

14  underlying document was written.

15     Another type of pdf file is herein referred to as a

16  "generated" pdf file.  In this format there is never a hardcopy

17  printout.  Instead, a document is written on a computer using a

18  word processing software such as Microsoft Word.  Then the

19  computer takes the Word file and generates therefrom a pdf file.

20  An important point about "generated" pdfs is that sometimes the

21  program creates formatting errors in the pdf such that the pdf

22  does not in any way resemble a printout of the underlying

23  document.

24     The instant pdf is identified by government as "Hasston

25  letter to Minister".  See identifying information from

26  government translator at the bottom of Exhibit D to government

27  letter.  Government produced this pdf to defendant on a CD

28  labeled T#185878 in a folder labeled "Full Translations."  The

4

document is "Hasston letter to Minister.pdf".  This actual pdf,
in Farsi language, is reproduced as Exhibit 2 to this motion.

Finally, as the Court may be aware, all computer documents
contain "metadata" which can indicate the origin of the
document.  In the case of pdf files, the metadata is accessible
by selecting "Document Properties" from the menu on the viewing
program, here, typically, Adobe Acrobat.

Several things are immediately clear:

1.  This is a generated pdf, not a scan.  In the top half
of the first page is a date in Farsi that "printed" with all the
letters aligned vertically and disconnected.  Farsi letters go
right to left with most letters of the same word connected.  The
error is obvious and blatant.  The clear conclusion is *this
letter could not have been sent and could not be sent*, anymore
than one could send an English letter with the individual
letters arrayed top to bottom (like Chinese characters).

2.  There is no signature.  The government's English
translation implies there is a signature at the bottom but there
is not.  Defendant's name is "typed" (meaning written in
computer-generated characters like the characters in this
paragraph) not hand-signed.  There is in fact no handwriting at
all on the entire document.  In this motion, "typed" or
"typewritten" will be used to refer to computer-generated
characters as opposed to handwriting or a handwritten signature.

3.  There is no evidence the document was written by
defendant or even written on the seized computer.  That the *pdf*
appears on the computer seized by defendant says nothing about
how or where the document was written.

4.   This particular computer was a laptop, not a desktop confined to defendant's home or office.  It is by its very nature portable.  This computer has "been around."  It has demonstrably been all over the world.  There is no evidence and will be no evidence that defendant was the only person to use this computer.  Government did not take or preserve any DNA or fingerprint evidence as might indicate the identity of other users.

5.   Government has no evidence this "letter" was ever sent to anyone, or even printed out in hardcopy.

**B.   Government's contentions**

Government contends the document is admissible because it was found on the computer and is an "admission" of defendant. Government seeks to admit the document for the truth of the assertions therein, i.e., for the truth of the claimed description of a sale of goods to a company in Iran and alleged nonpayment therefor.

**C.   Grounds for objection**

This is an unsigned document whose sole connection to defendant is that it was found on a computer defendant was carrying, i.e., found in defendant's possession.  The document itself is hearsay sought to be admitted for the truth of the matter therein written.  On its face, the document is inadmissible hearsay unless found to be within a recognized objection.  The document also lacks authentication as a document written, endorsed or adopted by defendant.

That an unsigned document was found on a computer owned by

the opposing party, is insufficient to authenticate the document.  See Hageman v. Corporacion EG, S.A. de C.V., 2015 U.S. Dist. LEXIS 41314 * 7 (W.Tex.Dist. March 31, 2015) where the court held:

> [T]he Court cannot consider **the agenda, because it is offered for the truth of the matter asserted** (that potential trade secrets were discussed at the meeting) **and thus constitutes impermissible hearsay.** ...Furthermore, the agenda cannot be admitted under the business records exception to the rule against hearsay, **because it has not been properly authenticated.**  Defendants attempt to authenticate the document through a supplemental affidavit by Hageman, which states that the agenda "is a true and accurate copy of a document obtained from a computer owned by Veolectra and used by Plaintiff Michael Van Steenburg," but this affidavit **is insufficient to authenticate the document.**  See Fed. R. Evid. 803(6); Coughlin v. Capitol Cement Co., 571 F.3d 290, 307 (5th Cir. 1978) (finding no error in trial court's refusal to admit meeting agenda because of a lack of authentication under Rule 803(6) where the agenda was found during discovery, **did not bear a signature, and witnesses could only speculate as to who prepared it.)**

In Coughlin v. Capitol Cement Co., 571 F.3d 290, 307 (5th Cir. 1978), plaintiffs attempted to put in evidence an unsigned agenda, incriminating on its face, found in defendant's files during discovery.  No witness could state conclusively who prepared the agenda, although one testified "I suppose Al Brown."  The 5th Circuit affirmed that this document was unauthenticated and thus inadmissible.

Nicola v. United States, 72 F.2d 780 (3rd Cir. 1934) is

1    also highly instructive.  Government accused Nicola of tax

2    evasion, specifically, of crediting personal income instead to a

3    corporation, Point Improvement Company, which paid a lower

4    corporate tax rate.  "The government relied mainly upon entries

5    in the books of account interpreted in the light of a certain

6    typewritten letter, Government Exhibit No. 15."  Id. at 781.

7         This letter was introduced in evidence over Nicola's

8    objection.  The letter, all typewritten, read:

9              Mr. Girts:  Herewith find a number of
               salesmen's items that I have taken over from
10             the Miller P.M. Co. on which the collections
               are expected to be made and credited to me.
11

12             Report to me on this the 15th of every
               month.  **I have not entered these on my books**
13             **although I may do so in connection with**
               **taxes if we can declare a loss without**
14             **bringing suit.**

15             As we understand it, there is a heavier tax
               on the individual than on the corporation
16             and therefore I want to pass as many of
               these profits through land companies like
17             the Point Improvement Company, Nicola Bros.
               Co., or Nicola Land Co. as I can.. . .
18

19             Let me know what each one of the companies
               seem to have in overhead burden that would
20             be an offset to possible profits that might
               be swung to them.
21

22             F.F. Nicola

23

24         Government's agent testified he found the letter pinned to

25   a voucher relating to an account Nicola took over from the

26   Miller P.M. Co.  In other words, very much like the minister

27   letter in the instant case, the "Nicola" letter (a) was typed;

28   (b) was unsigned but bore defendant's typewritten name at the

                                  8

1  bottom; (c) was found in defendant's possession, indeed amongst

2  the very corporate account records of income that formed the

3  subject of the alleged tax evasion, indeed in the very place one

4  would expect the defendant to place the document in order to

5  carry out the evasion; (d) tracked the other evidence and

6  documents in the case; and (e) laid out the alleged crime

7  precisely.

8      The Court of Appeal found the letter inadmissible and

9  reversed the conviction.  The Court held (at 782):

> [The letter] was not only typewritten, but
> the name "F.F. Nicola" which it bore was
> also in typewriting.  There was no evidence
> establishing who wrote it, who pinned it to
> the voucher, or who left it in the book.  It
> was entirely unidentified and unproved.  Was
> it admissible against the defendant?
>
> "The generally accepted rule is to the
> effect that the mere fact that a letter
> (other than a reply letter) purports to be
> have been written and signed by the person
> in question is insufficient to establish its
> authenticity and genuineness.  This rule is
> especially applicable where the letter
> is typewritten or printed and the signature is
> attached by a rubber stamp or stencil, or is
> typewritten or printed.  9 A.L.R. 987, 988,
> note.
>
> **A letter does not prove itself.**  In order to
> make it evidence, it must be shown either to
> have been written by the person against whom
> it is produced, or by some one authorized to
> act in his behalf. Neither the authenticity
> nor genuineness of this letter was
> established by any evidence.  Its admission
> was clearly erroneous, and unless it appears
> beyond a doubt that the improper evidence
> admitted did not and could not have
> prejudiced the rights of the party duly
> objecting, a new trial should be awarded.
> . . .

**If this letter was properly admitted, then
any unproved and unsigned letter may be
admitted against a defendant in any
civil or criminal case, if some person,
friend, or foe, without authority, writes it
on a typewriter and pins it to a voucher
or some piece of paper and leaves it in an
account book.**
. . .
Its admission on this or any other theory is
untenable.  Its admission in evidence was
prejudicial and erroneous.

Government in <u>Nicola</u> tried to admit the letter as a

"business record" and part of the books of account, but the

court also rejected this effort, holding (at 783):

Being entirely unproved, its admission
violates the fundamental rules for the
admission of writings and documents, unless
it can be admitted on the theory, for
which the government contends, that it was
pinned to the voucher and, therefore, became
part of the books of account or part of the
voucher and so was admissible as an original
entry or part of the voucher. But the nature
of the letter and the meager facts about it
make it inadmissible on this theory.

A book of original entries and also an
account book of secondary entries is one in
which a detailed history of business
transactions is entered. Books of account
consist of entries made in the regular
course of business showing the transactions
which have actually occurred in the business
and not of orders, executory contracts,
things to be done subsequent to the entries,
or of methods and principles according to
which the business must be conducted and
entries made.
. . .
But assuming that the letter was genuine and
its execution proved, it purported to give
the bookkeeper certain instructions to be
observed by him in the allocation of
profits in tax returns and was then by him

10

1
2
3
4
5
6
7
8
9
10
11

or some one left attached to a voucher by a pin.  The pin has no significance and no more makes it an entry in the books or a part of the book of accounts or a part of the voucher to which it bears no logical relation than if it had been left with the voucher unattached. It was a mere separate piece of paper and could not be treated as a part of the voucher or book of original entry.. . . The letter shows upon its face that it was not intended to be a part of the voucher or an entry in the books. It relates to no transaction made in the regular course of business and its character and purpose cannot be changed into a proper entry in a book of accounts or made a part of the voucher by the magic of a pin or the place where it was found.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Aside from the difference in technology, Nicola is identical to the instant case.  As in Nicola, government's entire case is based on documents, not live fact witnesses of any kind.  A letter addressed to a person of interest to the alleged transaction (here, the Minister, in Nicola, Nicola's own bookkeeper) is found in a more or less appropriate place in defendant's possession.  The letter is entirely typewritten but bears defendant's name typewritten at the bottom.  The content of letter exactly tracks the alleged criminal transaction and refers to other facts that appear on other documents in the case (here, to sale of goods as far as Armenia, in Nicola, to the purchase of accounts receivable from a corporation and the alleged transfer of accounts to a land company).  But absent clear and admissible evidence, *other than the letter itself or its place of discovery*, that defendant wrote the letter or authorized its writing, the letter itself is inadmissible.

Doubtless the agents in Nicola were as pleased to find the

1  "incriminating" letter pinned to Nicola's records as today's

2  agents were to find the pdf in the seized computer.  But neither

3  letter is admissible.

4     Further authority for exclusion of the letter abounds.

5  Government in effect relies on possession of the letter in

6  defendant's "custody" (on the computer in his physical

7  possession at the airport) as proof of authenticity and adoption

8  of the statements in the letter.  But the general rule is

9  otherwise, as held in, for example, United States v. Mouzin, 785

10  F.2d 682, 692 (9th Cir. 1986).  In Mouzin, government sought to

11  admit an unsigned ledger found in defendant's apartment as

12  evidence of cocaine transactions.  The government could not

13  establish the authorship of the ledger or the handwriting.  As

14  in the instant case, the only link to the defendant was the

15  physical location of the ledger, i.e. in defendant's physical

16  possession.

17     This was not enough.  "[This Court has] rejected the

18  government's argument that possession of a document is

19  tantamount to adoption of its contends under Rule 801(d)(2)(B)

20  of the Federal Rules of Evidence.  As appellate judges, we are

21  acutely aware of the difference between the mere possession of a

22  document and an adoption of its contents."  Id. at 692.

23     Mouzin noted the defendant's fingerprints were found on the

24  ledger, but other fingerprints were there found as well.  In

25  this case government presents no fingerprint evidence, and in

26  any event according to the government's records the computer has

27  been handled so many times by so many people that such evidence

28  now would be inconclusive except to prove that many persons

1 | other than defendant handled this laptop.

2 |     Here as well, government can prove "possession" of the

3 | letter (in the computer seized from defendant at the airport)

4 | but this does not constitute adoption of its contents.

5 |     For the above reasons, the "letter to Minister" should be

6 | excluded from evidence.

7 | **II.   Alleged emails from "shantia34@gmail.com" - Government**
        **letter Exhibits A and B**

8 |

9 |     Government's letter contains two emails from

10 | "shantia34@gmail.com" which government contends were written by

11 | defendant.  Defendant is unable to respond or object to these

12 | emails at this time because defendant cannot find these emails

13 | anywhere in government's production.  Government produced a CD

14 | labeled "shantia34@gmail.com" which contains many emails, but

15 | defendant cannot find these particular emails on the CD or

16 | anywhere else.  They occur only as hardcopies attached to

17 | government's February 4, 2016 letter.  Lacking further

18 | information, defendant must defer objecting to these emails

19 | until a foundation therefor is presented at trial.

20 |     Defendant does note that the shantia34 emails, on their

21 | face, are entirely innocent.  The emails and attached purchase

22 | orders refer exclusively to a sale of goods to a company in

23 | Armenia, for further shipment to Erbil in Iraqi Kurdistan.  The

24 | second email states specifically that defendant is flying to

25 | Erbil.  These emails are actually inconsistent with government's

26 | theory that the goods were actually shipped to Iran.

27 |     Defendant reserves objections to Exhibit F, an alleged

28 | email from "zaferan83@live.com" on the same grounds.

Government contends "zaferan83@live.com" is the same as the defendant.  The evidence for this has not been presented. Defendant must reserve objections until the evidence is presented.

### III. Alleged email from "Mark Babaei" to shantia34@gmail.com - Government letter Exhibit C

Government seeks to introduce an alleged email from "mark.babaei@gmail.com" to "shantia34@gmail.com".  The email was allegedly subpoenaed from Google, which operates the open internet email service "gmail" aka "googlemail".  Government seeks to admit the email, which is on its face hearsay, as the "statement of a co-conspirator."

To date defendant has been unable to retrieve these emails from government's production, however there is a CD labeled "mark.babaei" which for technical reasons defendant has been unable to open and read.

The rule on hearsay from a co-conspirator in this District is stated in <u>United States v. Gatling</u>, 96 F.3d 1511, 1520 (D.C. Cir. 1996):

> Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement by a co-conspirator during and in furtherance of a conspiracy is not hearsay, and therefore evidence of such a statement is admissible to prove the truth of any matter asserted therein. In order to admit a statement under Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that the person making the statement was a co-conspirator and that the statement was made during and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175-76, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987).  This circuit additionally requires that **there be independent evidence of the**

14

> **conspiracy apart from the statement,**
> although the content of the statement itself
> can also be considered in determining
> whether such independent evidence exists.

In other words, "bootstrapping" is not allowed.  "The co-conspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy. [citation]  For the co-conspirator statements to be admissible, there must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement.  **To abandon the requirement that** *some* **evidence aside from the proffered co-conspirator's statements be presented to show that the defendant knowingly participated in the alleged conspiracy would be to render all such statements self-validating."**  United States v. Silverman, 861 F.2d 571, 586 (9th Cir. 1988).

It goes without saying that the independent evidence must be itself admissible, i.e., inadmissible hearsay cannot be used to show the conspiracy.  That would simply compound the error and constitute further bootstrapping.

Here, technical issues aside, the only evidence of a conspiracy with the so-called "Mark Babaei" are the emails themselves.  This is insufficient.

Indeed the defect is far more fundamental.  There is, in fact, no evidence that any such person as "Mark Babaei" even exists.  "Mark" is not an Iranian name, so at a minimum this is a pseudonym.  Certainly no one by the name "Mark Babaei" will testify at trial, nor will the existence of such a person be attested by any witness at trial.  No government agent has seen

1 or spoken to "Mark Babaei".  To have a conspiracy, there must be

2 a real person somewhere named "Mark Babaei."  Government has no

3 evidence of such a person other than the emails, which as

4 caselaw points out are not self-authenticating or self-

5 validating.

6       But the problem goes beyond that.  The only manifestation

7 of "Mark Babaei" presented by government is emails from source

8 "mark.babaei@gmail.com".  Unlike an email account at a server

9 within a company or government organization such as the court,

10 "gmail" accounts may be set up by anyone, or even by a computer

11 "robot" programmed to set up accounts.  Google does not follow

12 any verification process to insure that the person (if it is a

13 person) who set up the account with the name

14 "mark.babaei@gmail.com" is in fact "Mark Babaei" or is even a

15 real person.[1]

16       As a matter of common knowledge verifiable by anyone with

17 an internet connection, anyone can set up a "gmail" account on

18 Google under any name not previously taken by another user.  The

19 user can input any address or other identifying information in

20 connection with the account.  Because the gmail account and its

21 use is entirely free, Google undertakes no verification, not

22 even a credit card.  In practice Google does not even verify

23 that the user is a real person as opposed to a "bot" programmed

24

[1] This issue is pervasive.  Recent lawsuits contend, based on a
25 massive data leak, that the dating website Ashley Madison
created 70,000 fake email accounts through which computer-
26 generated "women" would communicate with actual male users and
entice them to spend real money on the site.  These "fembots"
27 were entirely the creation of programmers at the company.  No
actual women existed behind the email addresses.
28

to set up email accounts.

This issue was encountered in United States v. Blechman, 657 F.3d 1052 (10th Cir. 2011). Blechman was accused of multiple bankruptcy fraud, namely, filing "fake" bankruptcies for a fee to disrupt home foreclosures. Government presented a witness from AOL, which like Google offers internet-based email accounts to the general public. AOL's records showed that an email account was created using the screen name "Rablechman" which listed the full name and address "Robert Blechman, 10736 Jefferson Blvd., Culver City, CA 90230". This full name and address matched that of defendant. Government then introduced in evidence numerous emails sent to and from this email account, on the theory that these emails were sent too and from defendant Robert Blechman.

On appeal, defendant contended the AOL record did not, in fact, prove his connection to the email account, "because the critical, user-identifying information was input by a third party over the Internet and was not verified by AOL." Id. at 1062. The Court agreed:

> In this case, it is undisputed that the AOL record and the PACER records were offered to prove the truth of the matters asserted in these documents, namely that Blechman was the registered owner of the "rablechman@aol.com" e-mail address and that Blechman was associated with PACER account "RB1071" which someone used to access fraudulent bankruptcy cases in Tennessee.
> . . .
> The district court erred... It is undisputed that the crucial information in the AOL and PACER records -- specifically, the information concerning the identity of the user of the "rablechmen" AOL account and

17

the user of PACER account "RB1071" -- was
provided by a third party over the Internet,
not by an employee of AOL or PACER.  The
Government was required to demonstrate the
trustworthiness of the information...

But the record makes clear that neither AOL
nor PACER made a meaningful attempt to
verify the identity of the person who
submitted the information.  Beginning with
AOL, Patricia Johnson, the AOL investigator,
admitted that AOL did not verify who input
the "subscriber information" **and that it
could have been anybody in the world who
could access a computer.".** . . AOL made no
effort to verify the identity of the
individual who registered the "rablechman"
account:  **"Registration information is
recorded but not verified.  Fictitious names
and addresses are common."**

At most, in authentication of the "mark.babaei@gmail.com"
emails, government here can present information from Google that
some person ("anybody in the world") or some *thing*, created a
gmail account and input "Mark Babaei" -- on its face not
anyone's real name -- as the name thereon.  There is no evidence
who this "Mark Babaei" really is or even if this is a real
person.  Absent such basic evidence, there is no evidence of a
conspiracy and thus no grounds to admit the
"mark.babaei@gmail.com" emails.  The basic requirement of a
*person* with whom to conspire, is not met.

**IV.  Alleged email from "Mark Babaei" to "Aoub Shaban" -
Government letter Exhibit E**

Government seeks to produce an alleged email from
"mark.babaei@gmail.com" to "ayoub@ymail.com" as the statement of
a co-conspirator.  This email was not even sent or copied to
"shantia34@gmail.com".  This email contains multiple levels of

18

1  hearsay, all presented for the truth.

2       The last email presents the same problems as in Section IV

3  but to an even greater degree.  Again there is no evidence of

4  conspiracy involving "Mark Babaei", let alone the recipient

5  "Aoub Shaban", and defendant, other than the hearsay emails

6  themselves.  Bootstrapping is not allowed.  There is also no

7  evidence of the existence of any real persons named "Mark

8  Babaei" or "Aoub Shaban", again other than the emails

9  themselves.

10      In the normal co-conspirator case, a real person is

11  overheard or recorded making statements in alleged furtherance

12  of the conspiracy.  This satisfies the threshhold requirement of

13  a statement made by a co-conspirator.  But in the case of emails

14  from a public account, without more, there is no evidence who or

15  what, if anyone, is behind these emails, whether it be the

16  alleged co-conspirator or someone else entirely or no one at

17  all.

18      Because government cannot proffer any evidence of a

19  conspiracy, or for that matter real live human *conspirators*,

20  other than the hearsay emails themselves, these emails should be

21  excluded from evidence.

22  **V.   2004 Opinion by California Court of Appeal**

23      This opinion is subject of a separate motion by government

24  to which defendant will separately respond.  Defendant notes

25  that the apparent basis of admissibility is "prior bad acts".

26  Defendant notes, preliminarily:

27      (1)  The opinion, per se, is not evidence of any acts by

28  anyone.  There are no factual findings in the opinion, only the

19

1    review of a conclusion of law by the lower court.

2        (2)   To the extent the opinion is introduced as "notice" to

3    defendant, there is no evidence defendant himself ever saw this

4    opinion or read it.  That he was a named party does not prove he

5    ever obtained a copy of the opinion or read it.

6        (3)   The opinion itself is from 2004, and the acts therein

7    discussed took place in 2000 and earlier.  The events are thus

8    16 years remote in time, far too removed to be admitted as

9    "prior bad acts."  United States v. Foskey, 636 F.2d 517

10   (D.C.Cir. 1980) (two and one-half year earlier "prior bad act"

11   was held "too remote in time" to be admissible."

12       (4)   Admission of this opinion will result in a "mini-

13   trial" and undue consumption of time.  For example, in the

14   actual case that led up to the Court of Appeal opinion,

15   defendants presented evidence that they intended to seek an OFAC

16   license for the proposed transaction, but did not do so when the

17   Chinese counterparty terminated discussions.  Thus the actual

18   facts do not present wrongdoing.  All such facts would have to

19   be considered if this issue were introduced at trial.

**CONCLUSION**

20   Based on government's proffer and the available

21   information, this Court should exclude:

22   information, this Court should exclude:

23   1.   The "Hasston letter to Minister" or any other unsigned

24   letter

25   2.   The "Mark.Babaei" emails on grounds of no independent

26   evidence of conspiracy, or of conspirators

27   This Court should reserve admissibility of the "shantia34"

28   or other emails pending a showing of source and authentication

1   and objection at trial or pretrial hearing.  Defendant

2   specifically requests a pretrial hearing without the jury to

3   review any such document.

4        The Court should exclude the Court of Appeal opinion on the

5   grounds stated in defendant's opposition to government's pending

6   motion on that topic.

7

    DATED:  March 30, 2016

8

9

10                                    Saied Kashani
                                      California State Bar 144805
11                                    800 W. 1st St. Suite 400
                                      Los Angeles, CA  90012
12                                    tel. (213) 625 4320

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that on March 30, 2016, the foregoing was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I have also E-mailed a courtesy copy to counsel at Frederick.Yette@usdoj.gov.


  /s/    John Pierce