**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 13-274 (RC)** |
| | : | |
| **v.** | : | |
| | : | |
| **SHANTIA HASSANSHAHI,** | : | |
| aka **SHANTIA HASSAN SHAHI,** | : | |
| aka **SHAHI,** | : | |
| aka **SHANTIA HAAS,** | : | |
| aka **SEAN HAAS,** | : | |
| | : | |
| **Defendant.** | : | |

**THE UNITED STATES' OPPOSITION TO DEFENDANT'S CORRECTED
MOTION TO EXCLUDE DOCUMENTS ON EVIDENTIARY GROUNDS**

Defendant Shantia Hassanshahi, charged with conspiracy to unlawfully export goods and technology to Iran, seeks to exclude a letter and two e-mails that provide evidence of guilt. His motion is without merit. The government has made a prima facie case that the challenged letter was written by Defendant, and thus it is admissible. Any further dispute over authenticity is for the jury to decide. The two e-mails are also admissible as statements made by Defendant's coconspirator in furtherance of the conspiracy.

**BACKGROUND**

Defendant's motion attaches seven documents that the government has produced in discovery.[1]  *See* Defendant's Corrected Motion to Exclude Documents on Evidentiary Grounds, ECF Doc. No. 102-1 (hereinafter "Defendant's Motion"). Defendant challenges the

---

[1] In Defendant's Motion, Defendant states that the government has produced "additional documents" that were available years ago past the Court's discovery deadline of February 16, 2016. Indeed, the government produced the great bulk of any evidence it may seek to introduce at trial years ago. The emails and letters the Defendant has attached to his motion were produced with discovery letters dated November 13, 2013 (a forensic image of Defendant's lap top hard drive and emails from the "shantia34@gmail" email account); November 23, 2013(emails from the "zaferan83@live.com" email account); January 23, 2014 (emails from the "mark.babaei@gmail.com" email account); and May 22, 2014 (translations of Farsi documents).

admissibility of three of these documents (and any similar documents that might be excluded on the same bases raised by Defendant in his motion). The first challenged document is a letter on Hasston letterhead dated September 19, 2011, from Shantia Hassanshahi to Engineer Namjoo, the Minister of Energy.[2] *Id.*, Ex. D (hereinafter, "Hasston Letter"). The other two are e-mails sent from the address "mark.babaei@gmail.com." *Id.,* Exs. C, E (collectively, "Babaei e-mails").

## I.      Documents That Are Not Challenged in This Motion

The e-mail account "shantia34@gmail.com" is an account that was used by Defendant during the time relevant to this case. *See* ECF Doc. No. 42-1, ¶¶ 15, 18 (attached as Exhibit 1); ECF Doc. No. 1-1, ¶ 20 (attached as Exhibit 2). On May 27, 2009, an e-mail from that account was sent to two individuals at Areva Transmission and Distribution, attaching a "first purchase order" and promising to send a "second RFQ" shortly. Defendant's Motion, Ex.A. The attached purchase order was for $150,000 worth of merchandise to be shipped to Yerevan, Armenia. *Id.* The e-mail was signed "Shantia Hassanshah[,] Hasston, Inc., - President." *Id.*

The same e-mail account was used on October 15, 2009 to send an e-mail to "mark.babaei@gmail.com." *Id.*, Ex. B. It is entitled "From Shantia Flight info," and states:

Hi Mark:

It is finally flying this evening from Montreal but we are going to miss the connection flight and is going to Austria tonight and it will get on next flight to Erbil and estimated arrival date is on Oct. 23, 2009. Information Below [sic] is the flight numbers and dates. Have Jabber goes [sic] couple days earlier than the arrival date. Thanks.

[Flight details omitted]

Best Regards,

_____

[2] Majid Namjoo was Iran's Minister of Energy from August 2009 to August 2013, a tenure that approximates former Iranian President Mahmoud Ahmadinejad's second term in office.

Shantia Haas – President

*Id.*  Attached to this e-mail was a shipping form that indicated that Hasston was shipping

"protection relays" from "Dorval, Quebec" to "Yervan [sic], Armenia."  *Id.*

Defendant does not "object to these [two] emails at this time."  Defendant's Motion at 13.

**II.     The Challenged Documents**

The first of the two Babaei e-mails is dated October 26, 2009 and was sent from

"mark.babaei@gmail.com" to "shantia34@gmail.com."  *Id.*, Ex. C.  It was obtained from the

"mark.babaei@gmail.com" e-mail account.  That email states:

Dear Shantia

Finally I have talked with jabber, he is good and is working to solve the problems
and we hope up to [sic] tomorrow night the goods would be in [sic] Iran border.
If I receive any news I will inform you

Regards
Mark

*Id.*

The Hasston Letter is dated September 19, 2011.  *Id.*, Ex. D.  It is an English translation

of a Farsi document that was obtained from Defendant's laptop computer during a border search

conducted in connection with Defendant's return to the United States from Iran on January 12,

2012.  *See* ECF Doc. No. 42-1, ¶¶ 20-21 (Exhibit 1); ECF Doc. No.1-1, ¶ 22 & n.1 (Exhibit 2).

As described above, it is on Hasston company stationary and states that it is from Defendant to

the Iranian Minister of Energy.  *See* Defendant's Motion, Ex.D.  The letter states that Defendant,

through an intermediary, entered into a contract with Fars Regional Electric Company, in which

that company would pay $1,250,000 for protective relays that Defendant had purchased from

Areva for $1,000,000.  *Id.*  According to the letter, the intermediary only paid Defendant

$500,000.  *Id.*  Defendant, the letter states, paid $200,000 out of personal funds, which,

3

combined with the $500,000 from the intermediary, still left a $300,000 debt to Areva.  *Id.*  The

letter states:

> If Areva is not paid by [October 2011], that company will probably begin to look
> into the address and information of the fake user in the Central Asian countries.
> This would mean giving away the diverted itineraries of the <u>*High Tech*</u> goods to
> our country!
> . . .
> In consideration of the above, the losses and damages incurred, the waste of more
> than one month for travel to Iran – while leaving my company in the United
> States unattended – to appear in the Ministry of Energy to resolve this matter, I
> ask you to note that my unfulfilled obligations toward Areva [put] me in a critical
> and worrisome situation where it is feared that the manufacturer may bring a
> lawsuit against me in American courts for breach of agreement.  Since I am
> Iranian and [these] <u>*High Tech* items are subject to sanctions</u> and that the address
> and information of the end user is fake, the worst legal problems will be expected.

*Id.* (italics, underlining, and exclamation point in original).

The second Babaei e-mail is dated February 2, 2012 (less than a month after Defendant's

return from Iran) and was sent from "mark.babaei@gmail.com" to "ayoub@ymail.com" with a

copy to "zandi_arash@yahoo.com."  *Id.*, Ex. E.  In the e-mail, "Mark" writes that he has come to

Yerevan, Armenia to deal with a shipment of goods that was supposed to have been

"smuggle[d]" to Iran, but had instead been seized at the border by Armenian authorities.  *Id.*  The

e-mail states:  "I will return to Iran tomorrow.  Please tell Shantia that we didn't let anything be

traced back to Canada and they didn't even track this to Canada."  *Id.*

## ARGUMENT

### I.      The Hasston Letter Is Admissible

A document written by a defendant is not hearsay.  Fed. R. Evid. 801(d)(2)(A); *United*

*States v. Safavian*, 435 F. Supp. 2d 36, 43 (D.D.C. 2006).  Thus, the question Defendant raises is

one of authentication, *see* Fed. R. Evid. 901, in this case, whether the Hasston Letter is, as the government contends, a document authored by Defendant.[3]

Authentication is predominantly a question for the jury. *See Safavian*, 435 F. Supp. 2d at 38. While the Court must make an initial determination, the threshold for admissibility is "not high." *Id.*; *accord America v. Mills*, 654 F. Supp. 2d 28, 34 (D.D.C. 2009). At this stage, the "'burden of proof for authentication is slight,'" and the government "'need only demonstrate a rational basis for its claim that the evidence is what'" it is asserted to be. *Safavian*, 435 F. Supp. 2d at 38 (quoting *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994), and *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993)). The question for the Court is simply "whether the [government] has 'offered a foundation from which the jury could reasonably find that the evidence is what the [government] says it is.'" *Id.* (quoting 5 Federal Rules of Evidence Manual § 901.02[1], at 901-5-901-6).

The Court must determine "only that there is sufficient evidence that the *jury* ultimately might" find the document to be authentic. *Id.* (emphasis in original); *accord United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) ("Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury.").[4] A document may be authenticated based on circumstantial evidence, including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in

---

[3] Defendant contends that the Hasston Letter might not have been sent to the Iranian Minister. Defendant's Motion at 6. But this contention has no bearing on the document's admissibility. If it was written by Defendant, then it is a party admission and therefore not hearsay, regardless of who might have read it.

[4] Where an admissible document is in a foreign language, an English translation of the document is also admissible evidence. *See United States v. Cano-Flores*, 796 F.3d 83, 89 (D.C. Cir. 2015). Any dispute as to the correctness of a translation is a question for the jury. *E.g.*, *United States v. Rivera-Rosario*, 300 F.3d 1, 9 (1st Cir. 2002).

conjunction with circumstances." Fed. R. Evid. 901(b)(4); *accord Kaur v. New York City Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 324 (S.D.N.Y. 2010); *see also United States v. Thompson*, 449 F.3d 267, 274 (1st Cir. 2006) ("A document need not be signed or proven to be in the defendant's handwriting to be authenticated.").

The government easily meets the "slight" burden of demonstrating a rational basis that the Hasston Letter was written by Defendant.  First, the letter was found on Defendant's computer which was taken from Defendant's person. *See United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997) (that documents were taken from defendant's computer provided sufficient basis for authentication).  Second, the letter was written on the letterhead of the company through which Defendant conducted business. *See Kaur*, 688 F. Supp. 2d at 324 (that documents were on defendant's letterhead supported a finding of authenticity).  Third, the letter contains a printed signature block with Defendant's name. *Cf. United States v. One 56-Foot Motor Yacht*, 702 F.2d 1276, 1284 (9th Cir. 1983) (name on diary was evidence that it was that person's diary).

Finally, the contents of the letter accord with other evidence in this case. *See Safavian*, 435 F. Supp. 2d at 40 (holding that the "contents" of the challenged documents "also authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various identifiable matters"); *see also United States v. Sutton*, 426 F.2d 1202, 1207 (D.C. Cir. 1969) (case predating the Federal Rules of Evidence holding "that authorship or writings may be shown by circumstantial evidence, among the components of which the contents of the writing may play a significant role").  The Hasston Letter describes the purchase of protective relays from Areva, the shipping of the relays to "the fake user in the Central Asian countries," and the plan to "divert[]" the relays to Iran.  Each of these elements—

the nature of the goods, the identity of the supplier, the fake shipping destination (*i.e.*, Armenia), and the plan to smuggle goods into Iran—accords with other evidence, including the e-mails that Defendant sent on May 27, 2009 and October 15, 2009 that he has not challenged. *See, e.g.*, Defendant's Motion, Ex. A (email from Defendant attaching purchase order for purchase of items from Areva to be shipped to Armenia); Ex. B (e-mail from Defendant attaching shipping form indicating that protection relays were being shipped to Armenia); Ex. C. (e-mail to Defendant expressing expectation that goods would soon be transported from Armenia to Iran). The evidence thus strongly supports the conclusion that the Hasston Letter was written by Defendant.

Defendant relies principally on the depression-era case of *Nicola v. United States*, 72 F.2d 780 (3d Cir. 1934). That case long predates the Federal Rules of Evidence, which were first enacted in 1972, and the *Nicola* court did not apply current legal standards. The case is also distinguishable. The letter at issue in *Nicola*, which purported to be a letter from the defendant to his bookkeeper, was not found in defendant's possession, and thus there was no basis to believe the defendant had written it. *See id.* at 782-83. Moreover, there was essentially no corroborating evidence for the contents of the letter. *See id.* at 783. The Hasston Letter, in contrast, was found in Defendant's possession, and its contents are corroborated by other evidence.

Defendant also relies on *Hageman v. Corporación EG S.A.*, 2015 WL 1510009 (W.D. Tex. Mar. 31, 2015), and *Coughlin v. Capitol Cement Co.*, 571 F.2d 290 (5th Cir. 1978). But those cases involved meeting agendas (which by their nature would be expected to be in the possession of multiple people) whose authorship was unattributed. Similarly, *United States v. Mouzin*, 785 F.2d 682 (9th Cir. 1986), involved a document of unknown authorship, and held

7

that possession of a document authored by another is not "tantamount to an adoption of [the document's] contents." *Id.* at 692.  In this case, the government is not arguing that Defendant adopted the Hasston Letter because it was in his possession, but rather that the Hasston Letter is admissible because Defendant *authored* the document.

In short, the government has easily met the prima facie case for establishing that the Hasston Letter is a document written by Defendant.  Any further dispute as to authenticity that Defendant may seek to raise presents a question for the jury.

## II.    The Babaei E-mails Are Admissible

The contents of the Babaei e-mails identifies them as e-mails from the address "mark.babaei@gmail.com," one to Defendant's e-mail address and one to other e-mail addresses. *See Kluker*, 698 F.3d at 999; *Safavian*, 435 F. Supp. 2d at 40 (explaining that e-mails may be authenticated by examination of their "distinctive characteristics" such as the presence of e-mail addresses in "To" and "From" headings).[5]  They are admissible if the author of the e-mails (*i.e.*, the user of "mark.babaei@gmail.com") was a coconspirator with Defendant and the statements were made in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E); *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996); *United States v. De Gudino*, 722 F.2d 1351, 1355 (7th Cir. 1983).  The government must demonstrate this by a preponderance of the evidence, *Gatling*, 96 F.3d at 1520, and, to the extent there is any question, the Court "can preliminarily

---

[5] *United States v. Blechman*, 657 F.3d 1052 (10th Cir. 2011), relied on by Defendant, actually supports the government.  *See id.* at 1062 n.12 (citing *Safavian*, 435 F. Supp. 2d at 39-40, for the proposition that e-mails may be authenticated by their own distinctive characteristics).  The portion of the opinion that Defendant cites, however, is irrelevant here as it applies the standard for admitting records pursuant to the business records exception set forth in Federal Rule of Evidence 803(6).  Specifically, the court held that the documents at issue in that case were not admissible as business records because the business made no "meaningful attempt to verify the identity of the [outside] person who submitted the information" in the document.  *Blechman*, 657 F.3d at 1066.

admit hearsay statements of co-conspirators, subject to connection through proof of conspiracy."

*United States v. Gewin*, 471 F.3d 197, 201 (D.D.C. 2006); *see also United States v. Wilson*, 26

F.3d 142, 159 (D.C. Cir. 1994) (holding that "a decision on a motion should be deferred, if

disposing of the motion involves deciding issues of fact that are inevitably bound up with

evidence about the alleged offense itself"). And while there must be "independent evidence of

the conspiracy apart from the [coconspirator's] statement," the D.C. Circuit has held that "the

content of the statement itself can also be considered in determining whether such independent

evidence exists." *Gatling*, 96 F.3d at 1520.

There is indeed evidence, independent of the challenged e-mails, that the user of

"mark.babaei@gmail.com" was Defendant's coconspirator. *See De Gudino*, 722 F.2d at 1355

(statements of an unidentified coconspirator properly admitted into evidence). In the October 15,

2009 e-mail from "shantia34@gmail.com" to "mark.babaei@gmail.com," admissible as a

statement of a party opponent, Defendant writes that "[i]t is finally flying" and will arrive in the

Middle East around October 23, 2009. Defendant's Motion, Ex. B. Attached to the e-mail is a

shipping form indicating that "it" refers to a shipment of protection relays being shipped from

Canada to Armenia. *See id.* This, of course, is the subject of the conspiracy for which

Defendant is charged. Defendant provided this information to "Mark" along with instructions

that, on their face, indicate that "Mark" was a participant in the underlying transaction.[6] Mark is

to send "Jabber" to the arrival site, apparently to retrieve the protection relays for further

transport. *See id.*

---

[6] Although the conspiracy in this case was an unlawful one, the coconspirator hearsay exclusion is not limited to unlawful conspiracies; it applies wherever "two or more individuals are acting in concert toward a common goal," regardless of the legality or illegality of that goal. *Gewin*, 471 F.3d at 201 (quoting *United States v. Weisz*, 718 F.2d 413, 433 (D.C. Cir. 1983)).

Given this independent evidence of participation by "Mark" in the conspiracy, the Court can look to the content of the challenged documents to see if it corresponds with the independent evidence. *Gatling*, 96 F.3d at 1520. It does. In the first Babaei e-mail, "Mark" tells Defendant that he has "talked with jaber," who, although there's a slight spelling discrepancy, corresponds with the person whom Defendant instructed "Mark" to send to receive the protection relays. *See* Defendant's Motion, Ex. C. Moreover, based on his talk with "jaber," "Mark" is confident that "the goods" will be traversing the Iranian border the next night. *Id.*

In the second Babaei e-mail, "Mark" writes about problems that occurred when "the goods" that were "supposed [to be] smuggled" into Iran were seized by Armenian authorities at the Armenia-Iran border. *Id.*, Ex. E. He then requests that his correspondent "tell Shantia that we didn't let anything [be] traced back to Canada and [the authorities] didn't even track this to Canada." *Id.* "Shantia" is Defendant's first name. Canada is where the protection relays were shipped from. The content of this e-mail thus strongly suggests that "Mark" is talking about the protection relays that he and Defendant conspired to ship to Iran.

The documentary evidence demonstrates that Defendant and the user of "mark.babaei@gmail.com" were coconspirators in a joint plan to smuggle protection relays into Iran, and that the Babaei e-mails were statements made in furtherance of that conspiracy.

## CONCLUSION

For the foregoing reasons, and any other reasons the Court deems appropriate,

Defendant's motion should be denied.[7]

April 15, 2015                                       Respectfully submitted,

                                                     CHANNING D. PHILLIPS
                                                     United States Attorney

                                                     FREDERICK YETTE, D.C. Bar 385391
                                                     Assistant United States Attorney
                                                     National Security Section
                                                     555 4th Street, N.W.
                                                     Washington, D.C.  20530
                                                     frederick.yette@usdoj.gov
                                                     (202) 252-7733


                                                     _____/s/_____
                                                     JEFFREY M. SMITH, D.C. Bar 467936
                                                     Appellate Unit
                                                     National Security Division
                                                     950 Pennsylvania Ave., N.W.
                                                     Washington, D.C. 20530

---

[7] The Defendant's Motion notes an objection to the government's intention to introduce into evidence a 2004 opinion by the California Court of Appeal.  The government has stated its intention to use the opinion as evidence in a motion to introduce other crimes evidence, ECF Doc. No. 94.  Since the Defendant stated that he will file a separate response opposing the introduction of the opinion, the government will not respond to the Defendant's objections in this pleading.