**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
|     v. | : |
| | :   Criminal Action No.: 13-0274 (RC) |
| SHANTIA HASSANSHAHI, | : |
| *also known as Shantia Hassan Shahi*, | :   Re Document Nos.:   94, 102 |
| *also known as Shahi*, | : |
| *also known as Shantia Haas*, | : |
| *also known as Sean Haas*, | : |
| | : |
|     and | : |
| | : |
| HASSTON, INC., | : |
| | : |
|     Defendants. | : |

## MEMORANDUM OPINION

**GRANTING THE GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE OF PRIOR BAD ACTS;
DENYING DEFENDANT'S MOTION TO EXCLUDE DOCUMENTS**

## I. INTRODUCTION

Defendant Shantia Hassanshahi is charged with one count of conspiracy to violate the

International Economic Emergency Powers Act, 50 U.S.C. § 1705, and the Iranian Transactions

and Sanctions Regulations, 31 C.F.R. §§ 560.203–204, commonly referred to as the United

States' trade embargo against Iran. The Government alleges that Mr. Hassanshahi and a

company he owns, co-defendant Hasston, Inc., conspired with others known and unknown to

export "protection relays"—a type of circuit breaker for use in electrical power grids—to Iran

without obtaining a license from the Office of Foreign Assets Control ("OFAC"), located in the

District of Columbia, as required by federal law.

The Government has provided notice of its intent to introduce certain evidence of prior bad acts against the defendants pursuant to Federal Rule of Evidence 404(b), and has moved to introduce such evidence. Specifically, the Government intends to elicit evidence that Mr. Hassanshahi had knowledge that a license from OFAC was required to do business in Iran. *See* Gov't's Mot. & Notice Intention Introduce Evid. Prior Bad Acts, ECF No. 94 [hereinafter "Gov't's Mot."]. Separately, Mr. Hassanshahi has moved to exclude certain documentary evidence that the Government anticipates seeking to introduce at trial. *See* Def.'s Corr. Mot. Exclude Docs. Evidentiary Grounds, ECF No. 102 [hereinafter "Def.'s Mot."].

For the foregoing reasons, the Court will grant the Government's motion to introduce evidence of prior bad acts and deny Defendant's motion to exclude evidence.

## II. FACTUAL BACKGROUND

Shantia Hassanshahi is a dual citizen of Iran and the United States. On January 9, 2013, following an investigation of over a year, the Government filed a Criminal Complaint in this Court against Mr. Hassanshahi and a warrant was issued for his arrest. *See* Criminal Compl., ECF No. 1. On September 16, 2013, Mr. Hassanshahi was arrested at Los Angeles International Airport ("LAX"), and on September 26, 2013, a Grand Jury returned an Indictment in this Court against him and co-defendant Hasston, Inc., a company that Mr. Hassanshahi owns. *See* Indictment, ECF No. 7. The Indictment alleges that, beginning in or around March 2009, Mr. Hassanshahi engaged in a conspiracy to export and cause the exportation of goods and technology from Canada to Iran, as well as related services from the United States to Iran, without first obtaining the requisite license from OFAC, located in the District of Columbia, and therefore in violation of federal law. *See id.* ¶ 1. Specifically, the Government alleges that Mr. Hassanshahi and Hasston, Inc. conspired to export "protection relays"—a type of circuit breaker

for use in electrical power grids—from Canada to Armenia or Iraq. From those countries, the relays would then be transported to customers in Iran. *See, e.g.*, Aff. Supp. Criminal Compl. ¶¶ 22, 26, ECF No. 1-1 [hereinafter "Akronowitz Aff."].

As part of the Government's investigation, and prior to Mr. Hassanshahi's arrest, the Department of Homeland Security's Homeland Security Investigations division ("HSI") was alerted that Mr. Hassanshahi would be returning to the United States through Los Angeles International Airport ("LAX") on January 12, 2012. *See id.* ¶ 18. When he arrived, Mr. Hassanshahi was referred for a secondary screening. *Id.* ¶ 19. During that secondary screening, United States Customs and Border Protection officers seized several electronic devices in Mr. Hassanshahi's possession—including a laptop computer, multimedia cards, thumb drives, a camcorder, SIM cards, and a cell phone. *Id.* Those items were sent to Washington, D.C., where HSI conducted a forensic examination of the laptop and discovered numerous documents relating to Mr. Hassanshahi's apparent business activities in Iran. *Id.* ¶¶ 19–20. Among those documents was a PDF file of a September 19, 2011 letter on Hasston letterhead and addressed from Shantia Hassanshahi to the Iranian Minister of Energy, in which Mr. Hassanshahi asked the Iranian government for payment for "protective relays for transmission lines." *Id.* ¶ 22 n.1; *see also* Def.'s Mot. Attach., Ex. D, ECF No. 101-1 (reproducing translated copy of letter).

Since that time, the Government has also obtained e-mails sent by or to Mr. Hassanshahi, or among his alleged co-conspirators. In one e-mail, dated October 26, 2009, an individual named "Mark Babaei" writes to a man identified as "Shantia Haas," the latter of whom has an e-mail address listed as "shantia34@gmail.com." *See* Def.'s Mot. Attach., Ex. C, ECF No. 101-1. The Government contends that Mr. Hassanshahi used that e-mail account during the time period relevant to this case. *See* Revised Aff. of Joshua J. Akronowitz ¶¶ 15, 18, ECF No. 42-1. In the

e-mail, Mr. Babaei indicates that he has "talked with jabber, he is good and is working to solve the problems and we hope up to tomorrow night the goods will be in [sic] Iran border." Def.'s Mot. Attach., Ex. C. A second e-mail, dated February 2, 2012, was sent from Mark Babaei to individuals identified as "Aoub Shaban" and "Arash Zandi," but not Mr. Hassanshahi. *Id.* Ex. E. In that e-mail, Mr. Babaei states that he traveled to Armenia to deal with a shipment of goods that was seized at the Armenian border. *Id.* The e-mail states: "Please tell Shantia that we didn't let anything be traced back to Canada and they didn't even track this to Canada." *Id.*

By letter, the Government has informed Mr. Hassanshahi's counsel that it anticipates introducing at trial the letter to the Iranian Minister of Energy and these e-mails, and that the documents are, overall, "representative of the types of documents the government will seek to admit at trial."[1] Def.'s Mot. Attach at 1–2. Mr. Hassanshahi has moved to exclude these documents as inadmissible hearsay, and he further claims that the letter lacks authentication. *See* Def.'s Mot. at 6, 15, 19.

The Government has also provided notice under Federal Rule of Evidence 404(b) that it will seek to elicit evidence that "defendant Hassanshahi previously attempted to do business in Iran without the required license from the government" and that he was "made aware that his attempt to do business in Iran . . . violated [the] laws of the United States." Gov't's Mot. at 1. The Government contends that Mr. Hassanshahi obtained this knowledge after a California court ruled against him and two other plaintiffs in a lawsuit in which the plaintiffs sought to enforce a

---

[1] In its letter to Mr. Hassanshahi's counsel identifying anticipated evidence, the Government listed several additional documents, which Mr. Hassanshahi does not seek to exclude at this time (although, in several cases, Mr. Hassanshahi states that he plans to oppose the evidence's admission at a later time). *See* Def.'s Mot. Attach at 1–2; *id.* Exs. A, B, F. The present memorandum opinion resolves only those evidentiary matters which the parties have fully briefed.

contract with a Chinese company. *See* Gov't's Mot. at 2–3. In that case, the plaintiffs alleged that the company, Tsann Kuen Enterprise Co., Ltd. ("Tsann"), had granted them the exclusive right to manufacture and sell Tsann's computers in Iran. *See generally Kashani v. Tsann Kuen China Enter. Co., Ltd.*, 118 Cal. App. 4th 531 (2004); *see also id.* at 536 (noting that "Shantia Hassanshahi" was among the three plaintiffs, and listing counsel identical to Mr. Hassanshahi's California-based co-counsel in this case). After Tsann purportedly ceased manufacturing computers or otherwise doing business in that industry, *see id.* at 536, 538, the plaintiffs filed a breach of contract action, alleging that Tsann had breached the parties' contract without cause and was liable for the damages plaintiffs incurred as a result, *id.* at 538–39.

Tsann asserted that the contract was unenforceable as contrary to public policy because it violated the Iranian Transactions and Sanctions Regulations. *Id.* at 539. The trial court agreed, and the California Court of Appeals affirmed. *Id.* at 537. The appellate court explained that, under the regulations, there exist "only two ways to avoid the prohibitions on dealing with Iran: coverage under a general license authorizing certain categories of transactions and issuance of a specific license." *Id.* at 546 (citations omitted). The court noted that the plaintiffs were United States citizens residing in California and that the "express purposes of the agreement were to supply goods, technology, and services to Iran and even to sell products to the Government of Iran." *Id.* at 547. Furthermore, the court stated that the plaintiffs "d[id] not contend that they had obtained authorization for their activities pursuant to any specific license." *Id.* Accordingly, the court concluded that plaintiffs' anticipated performance was "in clear violation" of the

Iranian Transactions and Sanctions Regulations and, therefore, the International Economic Emergency Powers Act.[2]  *Id.* at 548.

Mr. Hassanshahi's motion to exclude evidence raised several "preliminary" grounds for excluding the Rule 404(b) evidence.  *See* Def.'s Mot. at 20.  He has since filed a formal opposition opposing the introduction of any evidence under Rule 404(b).  *See generally* Def.'s Opp'n to Gov't's Mot. at 1, 4 ("Def.'s Opp'n"), ECF No. 114.

### III.  ANALYSIS

The Court will analyze each item of challenged evidence in turn.[3]

### A.  Prior Bad Acts Evidence

The Government seeks to introduce evidence that Mr. Hassanshahi previously attempted to do business in Iran and was aware that doing so violated the laws of the United States.  The Government contends that such evidence is admissible to show Mr. Hassanshahi's knowledge, intent, motive, and a lack of mistake or accident.

---

[2] The California appellate court also rejected the plaintiffs' argument that, because they contended they could seek a license in the future retroactively permitting the performance envisioned under the contract, the contract should be construed, if possible, to give it legal effect.  *Kashani*, 118 Cal. App. 4th at 548–49.  Citing the Second Restatement of Contracts, the court found that the executive order and regulations governing the export of goods and services to Iran were regulatory in nature and that enforcement of the parties' agreement was clearly outweighed by the public policy behind the governmental provisions.  *See id.* at 549–50.

[3] In his motion, Mr. Hassanshahi vaguely claims that the Government "continues to produce additional documents, all that were available years ago, through the present date, and all well past the originally-set February 16 deadline for production of documents."  Def.'s Mot. at 1.  Beyond this vague accusation, however, Mr. Hassanshahi does not identify any particular documents that he believes have been produced untimely, and the Government asserts that it "produced the great bulk of any evidence it may seek to introduce at trial years ago" (although it does not expressly state whether all records have been timely produced).  Gov't's Opp'n at 1 n.1, ECF No. 103.  Because the parties have not fleshed out this dispute (if any remains), the Court declines to consider any alleged discovery issues at this time.

Up front, the Court notes that the precision of its analysis is somewhat frustrated by the Government's failure to articulate the specific evidence it seeks to introduce under Rule 404(b)(1). The Government attached a certified copy of the *Kashani* opinion to its notice, but did not indicate whether it would seek to introduce the opinion in whole or in part.[4] In addition, the Government's notice did not clarify whether, or if, it would seek to offer other evidence concerning the prior conduct that is discussed in the *Kashani* opinion. This ambiguity led defense counsel to assume that the Government seeks to introduce the entirety of the opinion into evidence. *See, e.g.*, Def.'s Opp'n at 1, 4. It was not until its reply that the Government indicated that it plans to introduce only the cover page and the first and last pages of the opinion. *See* Gov't's Reply at 2, ECF No. 116. In addition, the Government stated for the first time that it intends to introduce a Letter of Intent describing the transaction with Tsann and purportedly bearing Mr. Hassanshahi's signature. Mr. Hassanshahi had no opportunity to respond to or dispute the letter of intent, so the Court declines to consider it in this motion. The Court will, however, consider the Rule 404(b)(1) issue, taking into account the limited portion of the opinion that the Government represents it will seek to introduce. That said, while the Court finds below that the knowledge demonstrated by the *Kashani* opinion and any other testimony or evidence discussing Mr. Hassanshahi's knowledge of the OFAC licensing requirements would be admissible as non-character evidence under Rule 404(b), the Court will defer final consideration

---

[4] The Government's letter to defense counsel identified Federal Rules of Evidence 902 and 1005 as specific grounds for introducing the *Kashani* opinion into evidence. *See* Def.'s Mot. Attach. Mr. Hassanshahi states in his opposition that he does not challenge the authenticity of the document. *See* Def.'s Opp'n at 4 n.3. Nevertheless, because the parties have not fully articulated arguments concerning the opinion's admission into evidence under these rules, and because the Court notes that a foundation may need to be laid, the Court defers final consideration of these issues.

of the excerpts of the opinion and any other, specific piece of evidence—including the necessary weighing under Rule 403—until the Government seeks to admit it at trial.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Yet, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As a result, although the rule is "stated as a restriction," in actuality it is "one of 'inclusion rather than exclusion.'" *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Rule 404(b)(1) "does not prohibit character evidence generally, only that which lacks any purpose but proving character." *Bowie*, 232 F.3d at 930; *see also United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) (explaining that evidence of prior bad acts "is excluded when its *sole tendency* is to prove that the defendant is a person of bad character and thus predisposed to commit the crime for which he is on trial" (emphasis added)).

To assess whether proffered evidence is admissible under Rule 404(b), the Court must first determine "whether the evidence is probative of some issue other than character." *Cassell*, 292 F.3d at 792. If it is, then the evidence will be admitted "unless it is otherwise prohibited under any of the other 'general strictures limiting admissibility,' such as Rule 403." *Id.* (quoting *United States v. Washington*, 969 F.2d 1073, 1080 (D.C. Cir. 1992)).

On the first step, the Government asserts that the *Kashani* opinion, and the fact that Mr. Hassanshahi previously was informed that his attempt to do business in Iran without the required license violated the law, show his "knowledge, intent, motive, and lack of mistake or accident."

Gov't's Mot. at 1; *see also id.* at 5–6.  This assertion indicates that the Government does not offer the evidence to show Mr. Hassanshahi's character as the type of individual who would export goods and services unlawfully to Iran; rather, the Government seeks to demonstrate that Mr. Hassanshahi and his company "had actual knowledge of the OFAC licensing requirement, but they knowingly and intentionally ignored the laws," and that their export activities to Iran was "no mistake or accident."[5]  *Id.* at 5–6.

The Court agrees that the evidence is highly probative of these issues.  The *Kashani* opinion shows that Mr. Hassanshahi was informed that efforts to export goods or services to Iran without the license required by OFAC contravene the Iranian Transactions and Sanctions Regulations.  This fact alone is highly probative of an absence of mistake, even though the underlying circumstances bear a strong similarity to the conduct charged in this case.  *See, e.g.*, *Bowie*, 232 F.3d at 930 (finding evidence that the defendant "possessed and passed counterfeit

_____

[5] Mr. Hassanshahi claims that the Government admits to seeking to introduce the *Kashani* opinion for a character purpose, because the Government states that it "seeks to elicit proof that defendant Hassanshahi previously attempted to do business in Iran without the required license from the federal government."  Def.'s Opp'n at 6 (quoting Gov't's Mot. at 1).  But this selective quotation omits the very next sentence of the Government's motion, which clarifies the purposes for which it seeks to admit the evidence.

Separate and apart from the Rule 404(b) issues, Mr. Hassanshahi also claims that the opinion is inadmissible hearsay and is being introduced for the truth of the matter asserted.  He notes that courts have held that judicial findings of fact do not fall within Federal Rule of Evidence 803(8)'s exception for "factual findings from a legally authorized investigation."  Fed. R. Evid. 803(8)(A)(iii); Def.'s Opp'n at 4–6; *see also, e.g.*, *Hairston v. Wash. Metro. Area Transit Auth.*, No. Civ. 93-2127, 1997 WL 411946, at *1–2 (D.D.C. Apr. 10, 1997) (rejecting effort to introduce an opinion's factual findings under then-current Federal Rule of Evidence 803(8)(C)).  Here, however, the Government seeks to introduce the opinion to show Mr. Hassanshahi's knowledge of the licensing requirements—and thus for a non-hearsay purpose. Moreover, the Government has now represented that it will not seek to introduce the bulk of the opinion, including the portions that discuss the factual background of the case.  *Cf. Hairston*, 1997 WL 411946, at *1 (noting that prior cases had held that the fact of a prior case's *existence* may be admissible).  Any concerns about the jury's use of the evidence to consider the truth of the matter asserted can be accommodated through an appropriate limiting instruction.

notes on a prior occasion was relevant because it decreased the likelihood that [he] accidentally or innocently possessed the counterfeit notes on [the day of the later crime]"); *United States v. Rogers*, 918 F.2d 207, 210 (D.C. Cir. 1990) (finding that prior bad acts evidence of similar crimes "indicated that [the defendant] was familiar with crack distribution near the St. Thomas More School"); *see also* 2 Jack B. Weinstein, *et al.*, *Weinstein's Federal Evidence* § 404.22[1][a], at 404-100–400-102 (2d ed. 2016) ("[E]vidence of another crime that tends to undermine [the] defendant's innocent explication for his or her act will usually be admitted."). In addition, the fact that Mr. Hassanshahi was unable to enforce his agreement against Tsann because he failed to possess the necessary license is probative both of his knowledge of the licensing requirement (at least as of 2004), and perhaps a motive for not seeking one to export the protection relays at issue in this case.

In response, Mr. Hassanshahi claims that the opinion cannot show knowledge because the Government does not explain how it intends to prove that the defendant named Shantia Hassanshahi who was a plaintiff in the *Kashani* case is the same person as the defendant in this case, *see* Def.'s Opp'n at 2 n.1, or how it will show that Mr. Hassanshahi became aware of the court's holding, *see id.* at 7–8; Def.'s Mot. at 20. Before admitting the evidence, the Government will have to lay a foundation to show that a reasonable jury could conclude that Mr. Hassanshahi and the plaintiff in the *Kashani* case are one in the same. The Court defers that issue for trial. On the second point, however, a jury could rationally infer from the fact that Mr. Hassanshahi was a named plaintiff in the *Kashani* lawsuit that he obtained knowledge of the court's ultimate ruling. If anything, his arguments to the contrary merely challenge the *weight* to give the opinion, not its admissibility. The argument that Mr. Hassanshahi never became aware of the court's ruling remains open to him, should he choose to make it before the jury.

The Court therefore concludes that the evidence "is probative of some issue other than character," *Cassell*, 292 F.3d at 792, and moves on to assess the proffered evidence under Rule 403. Rule 403 provides that a court "may exclude relevant evidence if [that evidence's] probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice is "not to be equated with testimony simply adverse to the opposing party," because "[v]irtually all evidence is prejudicial or it isn't material." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). Any prejudice posed by the evidence must be "unfair"; that is, the term must have "'an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Because Rule 403 "'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved," the D.C. Circuit has instructed that when a court "perform[s] the balancing test required under Rule 403, 'it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged.'" *Cassell*, 292 F.3d at 795 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).

As the Court just explained, the proffered evidence here is highly probative. But Mr. Hassanshahi makes three assertions that the Court construes as arguments that a risk of undue prejudice, undue delay, or waste of time outweigh the evidence's probative value.

First, he claims that the acts described in the *Kashani* opinion are too removed in time to be admitted as prior bad acts because the events surrounding the contract with Tsann took place

in 2000 or earlier, and the opinion itself dates from 2004.[6]  *See* Def.'s Opp'n at 9; Def.'s Mot. at

20.  Mr. Hassanshahi argues that there is a sixteen-year gap between the prior events in 2000 and

this prosecution in 2016.  *See* Def.'s Opp'n at 9; Def.'s Mot. at 20.  In the Court's view,

however, the relevant time period is much shorter.  Only five years elapsed between 2004, when

the California Court of Appeals' decision provided notice to Mr. Hassanshahi that his conduct

contravened the OFAC licensing requirements, and 2009, when he began engaging in the

charged acts.

And, regardless, temporal proximity is not dispositive.  For one thing, some courts have

observed that "to the extent such prior acts are relevant to the matter of knowledge, rather than

being relevant only to intent, remoteness may be less of a factor in determining the probative

value of the evidence."  *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982);

*see United States v. Fields*, 871 F.2d 188, 198 (1st Cir. 1989) (quoting *Rubio-Gonzalez* and

noting that remoteness is a particular concern when prior acts evidence is offered to show intent).

This observation flows from an acknowledgement that "[t]he passage of time and changing

---

[6] The only case Mr. Hassanshahi cites as support for this proposition is not on point. Although he quotes *United States v. Foskey*, 636 F.2d 517 (D.C. Cir. 1980) as holding that a prior bad act from two and a half years earlier was "too remote in time" to be admissible, Def.'s Mot. at 20; *see also* Def.'s Opp'n at 9, the phrase "too remote in time" appears nowhere in the opinion. Instead, the D.C. Circuit rested its conclusion that the defendant's prior arrest should not be admitted on its finding that the prior arrest was "dissimilar from the crime for which defendant was on trial with respect to . . . the relevant element—intent." *Foskey*, 636 F.2d at 524. As the circuit explained, "[t]he mere fact that a person was in the company of another who possessed drugs simply is not sufficient to justify a conclusion that he himself knowingly possessed drugs two-and-one-half years later." *Id.* Therefore, the court ruled that the prior arrest "lack[ed] the necessary similarity and relevance to justify its admission under Rule 404(b)." *Id.* Here, by contrast, the prior act is strikingly similar to that which Mr. Hassanshahi is charged with in this case, despite its vintage.  In a footnote in *Foskey* the circuit did note that the "time period separating the two arrests" was insufficient to show an ongoing plan or scheme (the government's original argument for admission in that case). *Id.* at 523 n.5. But the Government here does not claim that Mr. Hassanshahi's prior transaction with Tsann is related or connected to the events at issue in this prosecution.

circumstances are more likely to significantly change one's intent than they are to obliterate knowledge once gained." *Rubio-Gonzalez*, 674 F.2d at 1075. Here, as already discussed, the government seeks to introduce evidence of the prior act to show Mr. Hassanshahi's knowledge of the licensing requirements—not his intent in committing the present offense. Mr. Hassanshahi does not explain how the passage of time may have changed his recollection of those requirements.

In addition, when assessing whether to admit evidence of prior acts, courts consider *both* the prior act's age as well as its similarity to the charged conduct. *See United States v. Cheadle*, No. 92-3117, 1992 WL 380140, at *1 (D.C. Cir. Dec. 18, 1992) ("There is no mechanical test for determining whether evidence of a prior offense is too remote to be admissible, and admissibility depends on whether the prior act is probative with respect to the accused's intent."); *accord United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991) (stating that "decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value"). Where the degree of similarity between the acts is strong, courts have countenanced the admission of evidence notwithstanding a lengthy period of time between the two events. *See, e.g.*, *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (finding that Rule 404(b) was satisfied "notwithstanding the thirteen or more years that had elapsed since the events," because "[t]he prior act evidence in this case is sufficiently similar to the charged conduct to render it probative despite the passage of time"); *see also* 2 Weinstein, *supra*, § 404.21[2][c], at 404-79–404-80 (explaining that, "[i]f the connection between the other crime and the charged crime is strong, admission may be appropriate, even if the other acts were remote in time"). As the Court already explained, the similarity and connection between the

charged offense and Mr. Hassanshahi's prior conduct is strong. Therefore, its age is not an obstacle to its admission.

Second, Mr. Hassanshahi argues that there is a considerable risk of prejudice where the evidence proffered comes from a judicial opinion because a jury may place undue weight on the factual findings of another court. *See* Def.'s Opp'n at 10–12; *see also Moore v. Hartman*, 102 F. Supp. 3d 35, 143–45 (D.D.C. 2015). In light of the Government's concession that it intends only to introduce the first and last pages of the *Kashani* opinion, however, the Court is not persuaded that a similar risk is inherent under the circumstances of this case. The Government has proposed to excise much, if not all, of the substantive discussion of the opinion or the prior act, generally, and to focus closely on the *fact* of the prior lawsuit and the outcome. To the extent that certain details contained on the relevant page remain, any prejudice can be lessened by an appropriate limiting instruction or, perhaps, even redactions if necessary. *See, e.g.*, *United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003) (explaining that "limiting instructions ordinarily suffice to protect the defendant's interests"). But the Court does not believe that the introduction of evidence showing that Mr. Hassanshahi previously filed a lawsuit to enforce a contract, and was informed that the contract was unenforceable because he lacked the requisite license, presents a risk of unfair prejudice akin to the type that might flow from the introduction of judicial findings of fact without limitation.

Third, Mr. Hassanshahi contends that admission of evidence about the prior events will result in a "mini-trial," and he argues that there was evidence in the *Kashani* case indicating that Mr. Hassanshahi and the other plaintiffs "intended to seek an OFAC license for the proposed transaction, but did not do so when the Chinese counterparty terminated discussions." Def.'s Mot. at 20; *see also* Def.'s Opp'n at 12–15. He claims that this series of events shows that there

was no "wrongdoing," and that "[a]ll such facts" would have to be considered at trial. Def.'s Mot. at 20. Given the Government's concession, however, there will be a more limited subset of issues to rebut. Still, it may be that Mr. Hassanshahi's clarifications will require the presentation of additional evidence. Regardless, the Court does not believe that any testimony concerning the plaintiffs' efforts to seek a license, or any other rebuttal evidence Mr. Hassanshahi presents, will result in undue delay or waste of time that would outweigh the probative force of the evidence. That Mr. Hassanshahi may have intended to seek an OFAC license but had yet to do so when Tsann terminated discussions does not undercut the prior acts' probative value in assessing Mr. Hassanshahi's knowledge of the licensing requirements. If anything, Mr. Hassanshahi's contention strengthens it, because it shows that he *was already aware* of the licensing requirements even before the court ruled in 2004. And his claims that, in light of the efforts to seek a license, the plaintiffs' acts "do not present wrongdoing," Def.'s Mot. at 20, or that the plaintiffs or Tsann might not have believed that the transaction was unlawful, Def.'s Opp'n at 14, are not dispositive. Rule 404(b) refers to "[e]vidence of a crime, wrong, *or other act*," Fed. R. Evid. 404(b)(1) (emphasis added), and courts have rejected arguments that "similar acts introduced to establish motive, intent, the absence of mistake or accident, or a common scheme or plan must necessarily be acts constituting a crime," *United States v. Senak*, 527 F.2d 129, 143 (7th Cir. 1975); *see also United States v. Dennis*, 497 F.3d 765, 768–69 (7th Cir. 2007). Without assessing whether Mr. Hassanshahi's prior conduct was criminal or illegal on its own, the events provide probative evidence that Mr. Hassanshahi had already been informed that he could not export goods to Iran without the required license. If the jury accepts this evidence, it would demonstrate Mr. Hassanshahi's knowledge of the licensing requirements, his motive for failing

to seek one for the protection relays at issue in this case, or the absence of a good faith mistake regarding the legality of his actions.

Because evidence concerning Mr. Hassanshahi's prior acts will not be introduced into evidence to prove his *character*, the evidence complies with Rule 404(b). Furthermore, particularly in light of the Government's representation that it anticipates introducing quite limited information about these prior transactions, its probative value outweighs any unfair prejudice or delay that might result from its admission. At trial, the Court will consider any more specific objections to the particular pieces of evidence the Government seeks to admit.

## B. The Letter

Next, Mr. Hassanshahi seeks to exclude the letter on Hasston letterhead, and addressed from Shantia Hassanshahi to the Iranian Minister of Energy, in which Mr. Hassanshahi asks the Iranian government for payment for "protective relays for transmission lines." Def.'s Mot. Attach., Ex. D (reproducing translation of letter). In its letter to Mr. Hassanshahi's counsel, the Government indicated that it anticipates seeking to introduce the letter as a non-hearsay statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A). *See* Fed. R. Evid. 801(d)(2)(A) (defining the statement of an opposing party "made by the party in an individual or representative capacity" as non-hearsay). Mr. Hassanshahi does not appear to dispute that, if the letter was written by him, it is admissible against him as the statement of a party opponent. Instead, he argues that the document "lacks authentication" and therefore cannot be attributed to him.

As the Government points out, Federal Rule of Evidence 901(a) governs the authentication or identification of evidence. That rule requires that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R.

Evid. 901(a). Rule 901(a) applies even when the proponent seeks to invoke Rule 801 and claims that a particular individual, or her agent, made the statement in question.[7] *See, e.g.*, *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006) ("Authentication for the purposes of Rule 801(d)(2) is governed by Rule 901(a), which requires that the plaintiff prove that the document is 'what its proponent claims.'"). In order to admit the evidence, the Court must conclude that the proponent "has 'offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is.'" *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (quoting 5 Stephen A. Saltzburg *et al.*, *Federal Rules of Evidence Manual* § 901.02[1] at 901-5–901-6 (8th ed. 2002)). The "threshold for the Court's determination of authenticity is not

---

[7] Mr. Hassanshahi's reply repeatedly argues that the Government has conflated the standard for authentication under Rule 901(a) and the issue of *authorship* or *speaker* under Rule 801(d)(2). Mr. Hassanshahi contends that the Court must make a threshold determination of the evidence's admissibility by a preponderance of the evidence—and therefore must make an initial determination that Mr. Hassanshahi wrote the letter under that standard. *See* Def.'s Reply at 2–3, ECF No. 113. Mr. Hassanshahi fails to identify any case directly on point, and on its own the Court has found only one. In *United States v. Harvey*, the Seventh Circuit noted that there was some question whether "the finding of authenticity under Rule 901 is sufficient to make . . . written materials nonhearsay under Rule 801." 117 F.3d 1044, 1049–50 (7th Cir. 1997). In fact, the court noted that "the admissibility of hearsay is routinely treated as a preliminary question under Rule 104(b)," which only requires evidence sufficient to support a jury finding. *Id.* (citing cases). The Seventh Circuit did question whether that rule remained valid in the wake of *Bourjaily v. United States* and the Supreme Court's holding that preliminary facts relevant to Rule 809(d)(2)(E)'s coconspirator exception must be proven to the court by a preponderance of the evidence. *Id.*; *see also Bourjaily v. United States*, 483 U.S. 171, 176 (1987). But after noting the issue, the Seventh Circuit declined to resolve it, concluding that the written materials at issue satisfied the preponderance of the evidence standard in any event because the "unique circumstances surrounding the recovery of the materials create the strong inference that [the defendant] was the author." *Harvey*, 117 F.3d at 1050. As the Seventh Circuit's language cited above in *Thanongsinh* makes plain, that circuit has not adopted *Harvey*'s dicta and does not require a higher showing. Nor has the Court found any other authority holding that the Court must make a threshold determination by a preponderance of the evidence that Mr. Hassanshahi is the author of the disputed letter in order to admit it and allow the authenticity issue to go to the jury. In any event, Mr. Hassanshahi can renew his objection at trial, should he believe that the evidence the Government ultimately does admit fails to show by a preponderance of the evidence that he wrote the letter, and the Court can reconsider the legal issue at that stage.

high," however, *id.*, and the proponent's "burden of proof for authentication is slight,"

*McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985).  Rule 901(a) "does not

erect a particularly high hurdle" to evidence's admission, *United States v. Ortiz*, 966 F.2d 707,

716 (1st Cir. 1992), nor does it require the proponent "to rule out all possibilities inconsistent

with authenticity, or to prove beyond any doubt that the evidence is what it purports to be,"

*United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks and citation

omitted).  The ultimate resolution of the evidence's authenticity is reserved for the jury.  *See*

*Safavian*, 435 F. Supp. 2d at 38.  The court "must admit the evidence if sufficient proof has been

introduced to support a finding that the fact does exist," and "in spite of any issues the opponent

has raised about flaws in the authentication" (which only "go to the weight of the evidence

instead of its admissibility").  5 Weinstein, *supra*, § 901.02[3], at 901-13, 901-15; *see also* 4

Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:44, at 389 (4th ed. 2013)

(explaining that the jury decides whether a statement was made, and "[a] party who denies

making a statement cannot keep it out . . . if the proponent presents sufficient proof to support a

jury finding that the objecting party made the statement").

Here, the Government's proffer indicates that it will be able to produce sufficient

evidence at trial to lay the necessary foundation.  One method of authenticating an item of

evidence is eliciting evidence concerning the "appearance, contents, substance, internal patterns,

or other distinctive characteristics of the item, taken together with all the circumstances."  Fed.

R. Evid. 901(b)(4).  The letter was recovered from a computer taken from Mr. Hassanshahi's

possession and from which the Government retrieved several similar documents concerning

exports to Iran.  *See* Akronowitz Aff. ¶ 22 & n.1; *see also United States v. Dumeisi*, 424 F.3d

566, 575 (7th Cir. 2005) (noting that the circumstances to consider "include circumstances

surrounding discovery"); *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997) (concluding that the district court did not abuse its discretion in admitting evidence of computer printouts under Rule 901(a) where FBI Special Agent testified that records were retrieved from co-defendant's computer); *United States v. Huguez-Ibarra*, 954 F.2d 546, 552–53 (9th Cir. 1992) (noting that notebooks "were circumstantially authenticated because they were found in [the defendants'] home in safes with cocaine and documents bearing [the defendants'] names"). The letter was also written on the letterhead of his co-defendant company, Hasston, Inc.—the company through which Mr. Hassanshahi conducted business for the transactions relevant to this case. *See* Def.'s Mot. Attach, Ex. D; *see also Kaur v. N.Y.C. Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 324 (S.D.N.Y. 2010) (considering, among other factors, that the "documents are all produced on Defendant's letterhead"). The signature block also lists Mr. Hassanshahi's name. *See* Def.'s Mot. Attach, Ex. D; Akronowitz Aff. ¶ 20 (noting that e-mails obtained from Mr. Hassanshahi's laptop frequently used a signature block identifying him as President of Hasston, Inc.); *cf. Huguez-Ibarra*, 954 F.2d at 552; *United States v. One 56-Foot Motor Yacht*, 702 F.2d 1276, 1284 (9th Cir. 1983) (considering, among other circumstances, that a diary contained a name similar to one of the defendant's aliases). Finally, the letter's contents aligns with much of the other evidence in this case, as it discusses the export of production relays to Iran manufactured by Areva Company (which matches the company identified on purchase orders in other documents the Government produced). *Compare* Def.'s Mot. Attach., Ex. D, *with id.* Ex. A; *see also Safavian*, 435 F. Supp. 2d at 40. Given the presence of the document on

the defendant's computer, the signature block listing his name, and the letter's contents, a jury could reasonably conclude that Mr. Hassanshahi wrote the letter.[8]

In light of this showing, Mr. Hassanshahi's counter evidence is not persuasive. While Mr. Hassanshahi claims that there is no evidence the document was written by him or on the seized computer, *see* Def.'s Mot. at 5, the surrounding circumstances could rationally lead the jury to conclude otherwise. He also points out that the letter bears no signature, claims that, as a PDF, there is no indication the letter was actually drafted or generated on the laptop from which it was recovered, notes that the listed date on the original Farsi version includes formatting errors, and generally asserts that there is no indication the letter was sent to anyone. *See* Def.'s Mot. at 3–6. Yet, whether or not this particular letter was in draft or final form, was created on the laptop from which it was recovered, or was ever sent to the Iranian Ministry, are all irrelevant for determining the letter's admissibility. *See United States v. Thompson*, 449 F.3d 267, 274 (1st Cir. 2006) (noting that "[a] document need not be signed or proven to be in the defendant's handwriting to be authenticated"); *United States v. Spiller*, 261 F.3d 683, 690 (7th Cir. 2001) (concluding that defendant's handwritten letters listing the quantities of crack cocaine he sold, and which the defendant "kept in his own bedroom," were admissible as statements of a party opponent); *S. Cent. Bank & Trust Co. v. Citicorp Credit Servs., Inc.*, 863 F. Supp. 635, 646 (N.D. Ill. 1994) ("[The defendant's] assertion that the crossed out sentence was never conveyed or intended to be seen by anyone is simply not relevant. Secret diary entries, for example, are no

---

[8] Mr. Hassanshahi attacks the Government's reliance on several of the cases cited above, claiming that in each case additional evidence of authentication was found. *See, e.g.,* Def.'s Reply at 5–6, 7–8 & n.2. Contrary to his argument, however, the Court does not read these cases as holding that *all* of the surrounding circumstances discussed were necessary to each court's conclusion that the Government had met its burden to support a prima facie case. In any event, the question is inherently a context- and fact-specific one. Under the circumstances of this case, the Court finds that the Government has met its burden.

less assertions or admissions simply because the author never intended to convey them to anyone."). Mr. Hassanshahi's contentions to the contrary thus concern only the weight to give the evidence and, notwithstanding these arguments, the Government's evidence could support a jury's conclusion that Mr. Hassanshahi wrote the letter. While his arguments may provide fodder for urging the jury to discount the letter or to conclude that Mr. Hassanshahi did not write it, they do not suffice to overcome the Government's prima facie case and bar the letter's admission in the first instance.[9]

Nor do the cases Mr. Hassanshahi cites direct otherwise. He places considerable weight on the Third Circuit's decision in *Nicola v. United States*, decided in 1934—decades before the Federal Rules of Evidence were adopted—in which that circuit concluded that a typewritten letter, bearing the name "F. F. Nicola" and purportedly found among the defendant's company's books, was inadmissible. 72 F.2d 780, 782–83 (3d Cir. 1934). That case is distinguishable, even putting aside the fact that the case predated, and therefore was not decided under, Rule 901(a) and that the decision contains an antiquated view of written communications that is out of step with documents prepared in the twenty-first century.[10] In *Nicola* the Third Circuit noted

---

[9] Mr. Hassanshahi also points out that the letter is an English-language translation of the original document written in Farsi. He raises no issue with the accuracy of the translation, however, and absent any inaccuracies the jury may consider foreign language translation of transcripts or other evidence, just like any other evidence. *See United States v. Cano-Flores*, 796 F.3d 83, 89 (D.C. Cir. 2015). Generally, the interpretation of a foreign language translation, or the accuracy of the translation, presents a jury question. *See, e.g.*, *United States v. Rivera-Rosario*, 300 F.3d 1, 9 (1st Cir. 2002); *United States v. Cruz*, 765 F.2d 1020, 1023 n.4 (11th Cir. 1985).

[10] For example, the court emphasized that the name was "also in typewriting," and stated that the generally accepted rule that a letter itself is insufficient to establish its authenticity "is especially applicable where the letter is typewritten or printed and the signature is attached by a rubber stamp or stencil, or is typewritten or printed." *Nicola*, 72 F.2d at 782. Such concerns have not persisted under Rule 901. Courts regularly consider electronic communications much like any other writing. *See, e.g.*, *Safavian*, 435 F. Supp. 2d at 40 (concluding that e-mails could be authenticated under Rule 901(b)(4) where, among other things, "most of the e-mail addresses

that "the mere fact that a letter . . . purports to have been written and signed by the person in question is insufficient to establish its authenticity and genuineness," and further concluded, without much analysis, that "[n]either the authenticity no[r] the genuineness of [the] letter was established by evidence." *Id.* In this case, however, and as explained above, there exist several indicia—albeit circumstantial—that suffice under Rule 901(b)(4) to indicate that Mr. Hassanshahi wrote the Hasston letter.[11]

The other cases Mr. Hassanshahi relies on are similarly inapposite. Both *Coughlin v. Capitol Cement Co.*, 571 F.2d 290 (5th Cir. 1978) and *Hageman v. Corporaction EG, S.A. de C.V.*, No. 14-cv-976, 2015 WL 1510009 (W.D. Tex. Mar. 31, 2015) considered parties' efforts to introduce agendas of business meetings under the hearsay exception for business records and where, among other things, the agenda's authorship was uncertain. Rule 803(6), at issue in each case, details several showings the proponent must make, through the testimony of a custodian or other qualified witness, to authenticate a document as a business record. *See* Fed. R. Evid. 803(6)(A)–(E). Each court concluded that the proponents had not met the strictures of that rule. *See Coughlin*, 571 F.2d at 307; *Hageman*, 2015 WL 1510009, at *8. Here, however, the Government is not seeking to admit the letter as a business record, so those cases are not

---

themselves contain the name of the person connected to the address," "the name of the sender or recipient [was included] in the bodies of the e-mail," and the e-mails' contents "also authenticate them as being from the purported sender and to the purported recipient").

[11] The other case Mr. Hassanshahi cites, *United States v. Peters*, is also distinguishable. There, the district court granted the United States' motion to strike the affidavits, tax forms, and an unsigned letter from an individual purporting to explain why the IRS had erred in determining the taxes that Ms. Peters, the defendant in a case to recover delinquent income taxes, owed. *See* No. 4:12-cv-01395, 2014 WL 6669757, at *2 (E.D. Mo. Nov. 24, 2014). The Court concluded that the letter was "inadmissible hearsay without exception" as well as "inadmissible opinion testimony from an individual who was neither identified nor qualified as a lay or expert witness." *Id.* As the full context reveals, the court's resolution did not depend on, or even reference, the fact that the letter was unsigned.

applicable. Moreover, there is ample evidence from which the jury could conclude that the letter was written by Mr. Hassanshahi, which suffices for purposes of Rule 801(d)(2)(A). And, contrary to Mr. Hassanshahi's citation to *United States v. Mouzin*, the evidence stretches further than Mr. Hassanshahi's mere possession of the document. *See* 785 F.2d 682, 692 (9th Cir. 1986) (holding that the mere presence of a ledger in a co-conspirator's residence could not "constitute an adoption of its contents," and rejecting the proposition that "possession of a document is tantamount to an adoption of its contents").

Accordingly, the Court denies Mr. Hassanshahi's motion to exclude the letter.

### C. The E-mails

Finally, Mr. Hassanshahi seeks to exclude the two e-mails sent by "Mark Babaei," which the Government asserts it will seek to admit at trial as the statements of a co-conspirator. Federal Rule of Evidence 801(d)(2)(E) provides that a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is admissible as non-hearsay. Fed R. Evid. 801(d)(2)(E). To admit a statement under this rule, the Court "must find by a preponderance of the evidence that the person making the statement was a co-conspirator and that the statement was made during and in furtherance of the conspiracy." *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). The proffered statement "must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it." Fed. R. Evid. 801(d)(2); *accord Gatling*, 96 F.3d at 1520 (noting that the D.C. Circuit "additionally requires that there be independent evidence of the conspiracy apart from the statement, although the content of the statement itself can also be considered in determining whether such independent evidence exists").

As explained above, one of the e-mails was sent by Mark Babaei to "Shantia Haas," whose e-mail address is listed as "shantia34@gmail.com," and who the Government contends is Mr. Hassanshahi.  *See* Def.'s Mot. Attach, Ex. C; *see also* Akronowitz Aff. ¶¶ 16, 20.  In that e-mail, Mr. Babaei indicates that he has "talked with jabber, he is good and is working to solve the problems and we hope up to tomorrow night the goods will be in [sic] Iran border."  Def.'s Mot. Attach., Ex. C.  The second e-mail, dated February 2, 2012, was sent by Mark Babaei to Aoub Shaban and Arash Zandi (but not Mr. Hassanshahi), and represents that Mr. Babaei had traveled to Armenia to deal with a shipment of goods that was seized at the Armenian border, and states: "Please tell Shantia that we didn't let anything be traced back to Canada and they didn't even track this to Canada."  *Id.* Ex. E.

Mr. Hassanshahi claims that there is no evidence beyond the e-mails themselves that "Mark Babaei" exists or was a member of the conspiracy.  He notes that anyone can establish an e-mail account, and contends that "[t]he basic requirement of a *person* with whom to conspire, is not met."  Def.'s Mot. at 18 (emphasis in original).  In addition, with respect to the second e-mail, he claims that there is no evidence the recipient of the e-mail, Aoub Shaban, was a member of the conspiracy.[12]

At present, the Court will defer a final ruling on the admissibility of these e-mails for trial.  *See United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) (explaining that "[a] court can preliminarily admit hearsay statements of co-conspirators, subject to connection through proof of conspiracy"); *see also United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) (describing and approving procedure).  The only independent evidence of the conspiracy the

---

[12] Although Mr. Hassanshahi only references Mr. Shaban, the e-mail was also copied to Arash Zandi.

Government currently offers is a separate e-mail purportedly sent from Mr. Hassanshahi to Mr. Babaei, *see* Def.'s Mot. Attach., Ex. B, which the Government anticipates seeking to introduce as the statement of a party opponent under Rule 801(d)(2)(A), *see* Def.'s Mot. Attach. But Mr. Hassanshahi asserts he has been unable to locate that e-mail in the Government's production, and states he will defer any objections until a foundation is laid at trial. *See* Def.'s Mot. at 13. If that e-mail is admissible, it would likely supply the independent evidence of the conspiracy and Mr. Babaei's participation (or the participation of the user of "mark.babaei@gmail.com," whether an alias or otherwise), necessary to support the admission of the Mark Babaei e-mails. *See United States v. El-Mezain*, 664 F.3d 467, 505 (5th Cir. 2011) (holding that even documents for which declarant is *anonymous* "is not fatal to admissibility under Rule 801(d)(2)(E) . . . if the facts and circumstances surrounding the making of the statement indicate that the speaker is the member of the conspiracy or joint venture"); *accord United States v. Breitkreutz*, 977 F.2d 214, 219 (6th Cir. 1992). The e-mail was purportedly sent from Mr. Hassanshahi to "Mark Babaei," and discusses the shipment of production relays from Canada to Erbil, Iraq, by way of Austria, demonstrating a close connection to (and participation in) the conspiracy at issue in this case. Furthermore, once it is established that Mr. Babaei is a member of the conspiracy, his statements to Aoub Shaban and Arash Zandi would be admissible even if those individuals are not shown to be members of the conspiracy, so long as Mr. Babaei made those statements in furtherance of the conspiracy. *See, e.g.*, *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989) ("Though the Rule requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is made also be a member." (citation omitted)); *accord United States v. Frazier*, 280 F.3d 835, 848 (8th Cir. 2002); *United States v. Williamson*, 53 F.3d 1500, 1519

(10th Cir. 1995). Until the Court determines the predicate e-mail's admissibility, however, the Court must defer ruling on the additional e-mails sent by Mark Babaei.[13]

## IV. CONCLUSION

For the foregoing reasons, the Government's motion to introduce evidence of prior bad acts is **GRANTED** and Defendant's motion to exclude evidence is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 24, 2016
RUDOLPH CONTRERAS
United States District Judge

---

[13] For the first time in his reply brief, Mr. Hassanshahi argues that the two Mark Babaei e-mails do not show a common unlawful objective because they are separated by three years and involve shipments to different locations, Armenia and Iraq. *See* Def.'s Reply at 15–16. Mr. Hassanshahi also raises the possibility that these e-mails in fact identify two *separate* conspiracies—one through Armenia and a second through Iraq. *See id.* at 16–19. But it is a basic proposition that arguments made for the first time in a reply brief are waived. *See, e.g.*, *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006). In any event, because the Court defers resolution of the e-mails, it need not yet resolve these belated arguments. The Court notes, however, that the Indictment states that the conspiracy began in March 2009 and extended until January 2013, covering the time period of all of the e-mails. *See* Indictment at 1. In addition, although the Indictment specifies shipments to Armenia, the other documents in this case also show shipments through Iraq. *See, e.g.*, Akronowitz Aff. ¶¶ 22, 26. The Court does not foreclose the possibility that the Government will be able to link all of these events to a single conspiracy at trial.